**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA**

SONYA MCKNIGHT,

                    Plaintiff,

   v.

FARIDA KINGSBORO, et al.,

           Defendants.

CIVIL ACTION NO. 1:23-CV-01137

(MEHALCHICK, J.)

**MEMORANDUM**

Presently before the Court are three motions to dismiss filed by Defendants Kristyne Crist ("Defendant Crist"), Kirsten Heine ("Defendant Heine"), and Jerrett Ferrari ("Defendant Ferrari") (collectively, "OAG Defendants"); Defendants Anthony Cummings ("Defendant Cummings"), Chad Showers ("Defendant Showers"), and Dominic Cristillo ("Defendant Cristillo") (collectively, "Backup Officer Defendants"); and Defendant Farida Kingsboro ("Defendant Kingsboro") (collectively with Backup Officer Defendants and OAG Defendants, "Moving Defendants"). (Doc. 15; Doc. 17; Doc. 18). On July 10, 2023, Plaintiff Sonya McKnight ("McKnight") filed a complaint ("Complaint") against Moving Defendants and Defendants John and Jane Doe (collectively, "Defendants") in the United States District Court for the Middle District of Pennsylvania. (Doc. 1). This matter was reassigned to the undersigned District Judge on February 12, 2024.

For the following reasons, Moving Defendants' motions to dismiss shall be **GRANTED in part** and **DENIED in part**. (Doc. 15; Doc. 17; Doc. 18).

I.    <u>BACKGROUND AND PROCEDURAL HISTORY</u>

The following background is taken from McKnight's Complaint. (Doc. 1). McKnight is a Black woman who, at all times relevant to this matter, was a Magisterial District Judge

in Dauphin County, Pennsylvania. (Doc. 1, ¶ 13). On or around February 22, 2020, at 2:00 AM, McKnight's son Kevin was pulled over by Defendant Kingsboro in Harrisburg during a traffic stop. (Doc. 1, ¶ 32). The traffic stop was recorded on dashcam video without audio. (Doc. 1, ¶ 33). Upon being pulled over, Kevin called McKnight, who arrived on the scene about ten minutes later. (Doc. 1, ¶¶ 35, 39). Around the same time, backup officers Defendants Showers and Cummings and transport officer Defendant Cristillo, arrived on the scene. (Doc. 1, ¶¶ 36-37).

Once she arrived at the scene, McKnight spoke with Defendant Kingsboro, who informed her that Kevin was being arrested on an outstanding warrant and that drugs had been found on his person. (Doc. 1, ¶¶ 40-45). Defendant Kingsboro told McKnight that there was no need for officers to reenter Kevin's vehicle, so McKnight entered Kevin's running vehicle in the presence of all officers, turned the vehicle off, and removed the keys. (Doc. 1, ¶¶ 45-51). She was then given her son's belongings, including his money. (Doc. 1, ¶¶ 60-66).

At the conclusion of the traffic stop, Defendants Kingsboro, Showers, Cummings, and Cristillo all wrote separate incident reports that largely told the same story, including that McKnight seemed displeased with Kevin's arrest. (Doc. 1, ¶¶ 54-66). Defendants Kingsboro, Showers, Cummings, and Cristillo later informed their supervisor of McKnight's presence at the scene. (Doc. 1, ¶ 67). On or around March 5, 2020, the Dauphin County DOA's Criminal Investigation Division referred this matter to the Office of the Attorney General ("OAG") for investigation, where Defendant Ferrari was assigned to investigate the case. (Doc. 1, ¶¶ 70-71). Defendant Ferrari obtained a copy of the dashcam video and interviewed Defendants Kingsboro, Showers, Cummings, and Cristillo separately without showing them the dashcam video. (Doc. 1, ¶¶ 72-73).

On November 12, 2020, Defendant Ferrari then interviewed McKnight. (Doc. 1, ¶ 88). Defendant Heine was present during this interview. (Doc. 1, ¶ 88). During the interview, Defendant Ferrari told McKnight that there was no dashcam video of the incident and informed McKnight that she was being accused both of harassment and removing drugs from her son's vehicle. (Doc. 1, ¶¶ 89-93). McKnight told Defendant Ferrari that she knew a video existed and asked him to watch it. (Doc. 1, ¶¶ 91-92). According to McKnight's allegations in her complaint, Defendant Ferrari refused and told McKnight that it was her word as a Black woman against the word of four white officers, presumably Defendants Kingsboro, Showers, Cummings, and Cristillo. (Doc. 1, ¶¶ 89-93).

On December 16, 2020, soon after learning the OAG was going to criminally charge her, McKnight voluntarily surrendered with her attorney. (Doc. 1, ¶ 97) Plaintiff was subsequently charged with fabricating or tampering with evidence, obstructing with the administration of law, and official oppression and bail was set for $30,000. (Doc. 1, ¶ 99). McKnight was formally booked and posted bail. (Doc. 1, ¶ 101).

Before her preliminary hearing, McKnight and her attorney received the dashcam video. (Doc. 1, ¶¶ 102-104). However, Defendants Kingsboro and Ferrari did not mention nor introduce the dashcam footage at the preliminary hearing, which took place on February 19, 2021 before Judge Nicholas Lippincott. (Doc. 1, ¶¶ 104, 105). At the preliminary hearing, Defendants Kingsboro and Ferrari testified. (Doc. 1, ¶ 105). During her testimony, Defendant Kingsboro omitted that she gave McKnight permission to take possession of her son's car. (Doc. 1, ¶¶ 105-111). Defendant Ferrari's testimony revolved around phone records related to his investigation and interviews conducted during his investigation. (Doc. 1, ¶ 112). Judge Nicholas Lippincott found enough factual allegations to bind the charges over for trial,

stating, "there is enough to proceed here, and I think a lot of it comes down to, what was – what was in her mind?" (Doc. 1, ¶ 113). McKnight's case continued to trial. (Doc. 1, ¶¶ 113, 117).

Shortly after the preliminary hearing, McKnight announced that she was running for re-election, and on May 19, 2021, she was reelected as a Magistrate Judge. (Doc. 1, ¶¶ 114, 116).

McKnight's criminal trial took place on July 26, 2021, before Judge Stephen Lieberman. (Doc. 1, ¶ 117). Defendants Kingsboro, Showers, Cummings, and Cristillo testified. During her testimony, Defendant Kingsboro gave conflicting testimony about whether she reentered Kevin's vehicle and the manner in which McKnight took possession of the vehicle after her conversation with Defendant Kingsboro. (Doc. 1, ¶¶ 119-123). Defendant Kingsboro was impeached based on her conflicting testimony. (Doc. 1, ¶¶ 119-123). Defendant Kingsboro also testified that McKnight's demeanor was "agitated" the night of Kevin's arrest. (Doc. 1, ¶ 119). After the Commonwealth rested, McKnight moved for judgment on acquittal. (Doc. 1, ¶ 127). Judge Stephen Lieberman heard arguments from both parties and acquitted McKnight on all counts. (Doc. 1, ¶¶ 127-128).

McKnight now alleges that as a result of the charges and trial, she sustained damages including lost wages, attorney's fees and costs, damage to her reputation, and emotional harm. (Doc. 1, ¶¶ 171, 185, 194, 200, 205), and on July 10, 2023, she filed the instant Complaint asserting Ten Counts of violations of state and federal law. (Doc. 1). The Ten Counts are as follows: Count I – Malicious Prosecution in Violation of the Fourteenth Amendment; Count II – Conspiracy to Remove Plaintiff from Office via Malicious Prosecution in Violation of the Fourteenth Amendment; Count III – Malicious Prosecution

in Violation of the Fourth and Fourteenth Amendments; Count IV – Malicious Abuse of Process in Violation of the Fourth and Fourteenth Amendments; Count V – Conspiracy to Remove Plaintiff from Office via Malicious Prosecution and Abuse of Process with Racial Animus in Violation of the Fourth and Fourteenth Amendments; Count VI – Abuse of Process in Violation of Pennsylvania Law; Count VII – Malicious Prosecution in Violation of Pennsylvania Law; Count VIII – Intentional Infliction of Emotional Distress; Count IX – Negligent Infliction of Emotional Distress; Count X – Punitive Damages. (Doc. 1, at 20-32). She seeks compensatory damages, punitive damages, attorney's fees and costs, and declaratory and injunctive relief. (Doc. 1, at 33).

On September 11, 2023, OAG Defendants filed a motion to dismiss, and on September 19, 2023, they filed a brief in support of their motion. (Doc. 15; Doc. 20). McKnight filed a brief in opposition to OAG Defendants' motion to dismiss on October 7, 2023. (Doc. 32). OAG Defendants filed a reply brief on October 23, 2023. (Doc. 40). Defendant Kingsboro filed a motion to dismiss on September 17, 2023, and a brief in support of her motion on October 6, 2023. (Doc. 17; Doc. 31). McKnight filed her brief in opposition to Defendant Kingsboro's motion to dismiss on October 26, 2023. (Doc. 43). Defendant Kingsboro filed a reply brief on November 14, 2023. (Doc. 48). Backup Officer Defendants filed a motion to dismiss on September 18, 2023, and on October 2, 2023, filed a brief in support. (Doc. 18; Doc. 29). McKnight filed her brief in opposition to Backup Officer Defendants' motion to dismiss on October 15, 2023. (Doc. 34). Backup Officer Defendants filed a reply brief on November 3, 2023. (Doc. 46). Accordingly, the motions to dismiss have been fully briefed and are ripe for disposition. (Doc. 1; Doc. 20; Doc. 29; Doc. 32; Doc. 34; Doc. 40; Doc. 31; Doc. 43; Doc. 46; Doc. 48).

## II.    LEGAL STANDARDS

### A.    MOTION TO DISMISS STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a

court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

B.   42 U.S.C. § 1983

Plaintiff asserts claims pursuant to 42 U.S.C. § 1983, which provides a private cause of action for violations of federal constitutional rights. The statute provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

> 42 U.S.C. § 1983.

42 U.S.C. § 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To succeed on a § 1983 claim, a plaintiff must demonstrate that the defendant, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). Further, "a defendant in a civil rights action 'must have personal involvement in the alleged wrongs to be liable,' and 'cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.'" *Baraka v. M,cGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (internal citations omitted). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence*." Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)

## III.   DISCUSSION

Moving Defendants each argue the Complaint is subject to dismissal. OAG Defendants submit that the Complaint should be dismissed because it fails to state a claim against them for Equal Protection Clause violations, conspiracy, abuse of process, and malicious prosecution. (Doc. 20, at 2). OAG Defendants further argue that they enjoy immunity for the claims asserted against them. (Doc. 20, at 2). Similarly, Backup Officer Defendants contend that all claims against them should be dismissed because McKnight does not make factual allegations sufficient to state any claim against them, and her Complaint does not allege any specific wrongdoing by Backup Officer Defendants. (Doc. 29, at 2; Doc. 46, at 2). Backup Officer Defendants further assert that regardless, they are entitled to qualified immunity for all claims. (Doc. 29, at 2). Defendant Kingsboro argues the claims against her should be dismissed because McKnight failed to make factual allegations sufficient to state a claim for conspiracy, intentional or negligent infliction of emotional distress, or

malicious prosecution and abuse of process under state or federal law. (Doc. 31, at 2). Defendant Kingsboro also avers that she is immune on qualified immunity grounds and sovereign immunity pursuant to the Pennsylvania Tort Claims Act ("PTCA"). (Doc. 31, at 2).

As McKnight sees it, none of the Moving Defendants are immune from liability for the claims asserted against them. (Doc. 32, at 2-3; Doc. 34, at 2; Doc. 42, at 2). Further, she avers that she has sufficiently stated a claim for each of the Counts asserted in her Complaint. (Doc. 32, at 2-3; Doc. 34, at 2; Doc. 42, at 2). As all three of the instant motions to dismiss raise common issues, the Court will address the motions together, considering arguments and issues separately as appropriate.[1]

A.   PROSECUTORIAL IMMUNITY FOR DEFENDANT HEINE

The OAG Defendants assert that as a prosecutor in the Office of the Attorney General, Defendant Heine is entitled to absolute prosecutorial immunity for the claims against her. (Doc. 20, at 15-16). In turn, McKnight argues that Defendant Heine is not entitled to prosecutorial immunity because her actions of participating in the interview as part of the

---

[1] McKnight does not dispute that Defendant Crist enjoys prosecutorial immunity for actions he took in connection with this matter. (Doc. 32, at 26). All claims against Defendant Crist are accordingly **DISMISSED with prejudice**. (Doc. 1, at 20-33). She also concedes that Defendant Heine is entitled to sovereign immunity for all state law claims. (Doc. 32, at 7). All state law claims against Defendant Heine are **DISMISSED with prejudice**. (Doc. 1, at 28-33). McKnight also does not dispute OAG Defendants' argument that any standalone Fourteenth Amendment claim for malicious prosecution or abuse of process should be dismissed per the explicit source rule. (Doc. 32, at 26). All Fourteenth Amendment claims for malicious prosecution and abuse of process are **DISMISSED with prejudice.** (Doc. 1, at 20-27). Accordingly, the Court will not address the parties' arguments as they relate to whether or not Moving Defendants are entitled to qualified immunity for McKnight's Fourteenth Amendment claims for malicious prosecution or abuse of process.

criminal investigation were investigatory in nature and thus not within the scope of her duties as a prosecutor. (Doc. 32, at 26).

It is well settled that prosecutors enjoy absolute immunity for actions "intimately associated with the judicial phase of the criminal process . . ." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). "More than a mere defense to liability, prosecutorial immunity embodies the 'right not to stand trial' ... and is properly raised in a Rule 12(b)(6) motion to dismiss." *Odd v. Malone*, 538 F.3d 202, 207 (3d Cir. 2008) (internal citations omitted). "[W]hether a prosecutor is entitled to absolute immunity for his/her conduct depends on the function the prosecutor was performing." *Segers v. Williams*, 12 F. Supp. 3d 734, 738 (E.D. Pa. 2014). As such, a prosecutor is absolutely immune from suit with respect to actions he or she performed in a judicial or quasi-judicial capacity, but "not to administrative or investigatory actions unrelated to initiating and conducting judicial proceedings." *Odd*, 538 F.3d at 208 (quoting *Giuffre v. Bissell*, 31 F.3d 1241, 1251 (3d Cir. 1994)). This is a fact-specific inquiry. *See Roberts v. Lau*, 90 F.4th 618, 627 (3d Cir. 2024) ("'our prosecutorial immunity analysis focuses on the unique facts of each case and requires careful dissection of the prosecutor's actions.'") (quoting *Odd*, 538 F.3d at 210). Relevant here, the Supreme Court has held that a prosecutor is immune from suit under § 1983 "in initiating a prosecution and in presenting the State's case." *Imbler*, 424 U.S. at 431. Further, when a prosecutor functions as an advocate "in evaluating evidence and interviewing witnesses as he prepares for trial," he is absolutely immune for those actions. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). However, the Third Circuit has found that "[b]efore probable cause for an arrest, a prosecutor's 'mission at that time [i]s entirely investigative in character.'" *Fogle v. Sokol*, 957 F.3d 148, 160 (3d Cir. 2020) (quoting *Buckley v. Fitzsimmons*, 509 U.S. at 274); *see also Kalina v. Fletcher*, 522 U.S. 118,

129-31 (1997) (a prosecutor who made an allegedly false statement in an arrest warrant affidavit was not entitled absolute immunity); *cf. Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992) ("[e]vidence gleaned prior to the filing is deemed investigative.). "'[T]o earn the protections of absolute immunity' at the motion-to-dismiss stage, 'a defendant must show that the conduct triggering absolute immunity clearly appear[s] on the face of the complaint.'" *Weimer v. Cnty. of Fayette, Pa.*, 972 F.3d 177, 187 (3d Cir. 2020) (quoting *Fogle*, 957 F.3d at 161).

In her Complaint, McKnight alleges that Defendant Heine not only listened, observed, or evaluated evidence as a prosecutor during Defendant Ferrari's November 12, 2020 interview, but that she participated as an investigator by falsely telling McKnight that no video of the night of her son's arrest existed. (Doc. 1, ¶ 93; Doc. 32, at 25-26). Courts have considered the actions taken by a prosecutor before charges are filed to be investigative. *See Fogle*, 957 F.3d at 160 (noting that before an arrest, a prosecutor's mission is "entirely investigative"); *see also Kulwicki*, 969 F.2d at 1465 ("Evidence gleaned prior to the filing is deemed investigative. Certain pre-filing interactions with the police are investigative, such as directing evidence-gathering") (internal quotation omitted). Defendant Heine's presence and participation in Defendant Ferrari's interview of McKnight occurred prior to both the filing of charges and the preliminary hearing. (Doc. 1, ¶¶ 88-113). As such, Defendant Heine's actions in connection with the interview were investigatory in nature and she "cannot show that the defense of absolute immunity appears clearly on the face of the complaint." *Weimer*, 972 F.3d at 189; *see Munchinski v. Solomon*, 618 F. App'x 150, 154 (3d Cir. 2015) (suggesting that when a prosecutor interviews a suspect before charges are filed they "adopt[] 'the detective's role in searching for the clues and corroboration that might give [them] probable

cause to recommend that a suspect be arrested'" and thus are not entitled to prosecutorial immunity) (quoting *Buckley*, 509 U.S. at 273). Thus, at this stage of the litigation, the Court finds that Defendant Heine is not entitled to prosecutorial immunity for alleged Fourth Amendment violations. OAG Defendants' motion is **DENIED** on this basis. (Doc. 15).

      B.   QUALIFIED IMMUNITY FOR ALL MOVING DEFENDANTS

Moving Defendants each argue that they are entitled to qualified immunity for the claims asserted against them. (Doc. 20, at 11; Doc. 29, at 12; Doc. 31, at 19). Qualified immunity protects government officials from civil liability "in so far as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Courts consider two prongs when determining whether an official is entitled to qualified immunity: "(1) whether the official violated a constitutional right; and (2) whether the right was clearly established." *McAndrew v. Northumberland Cnty.*, No. 4:22-CV-00834, 2023 WL 408905, at *6 (M.D. Pa. Jan. 25, 2023); *see Davenport v. Borough of Homestead*, 870 F.3d 273, 281 (3d Cir. 2017). A right is "clearly established" when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "The Supreme Court has stated that this standard does not require a case directly on point but requires that 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Andresen v. Pennsylvania*, No. 1:20-CV-989, 2022 WL 3045843, at *3 (M.D. Pa. Aug. 2, 2022) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Relying generally on the text of a constitutional provision to find a clearly established right is not enough. *See Anderson,* 483 U.S. at 639 (defining clearly established as particular and relevant, rather than general violation of a constitutional provision and stating

that "if the test of 'clearly established law' were to be applied […generally…]" it would "convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.") (quoting *Davis v. Scherer*, 468 U.S. 183, 195 (1984)). At the motion to dismiss stage, this inquiry is the same. *Thomas v. City of Harrisburg*, 88 F.4th 275, 281 (3d Cir. 2023) ("[a]t the motion to dismiss stage, federal and state officials are entitled to qualified immunity unless (1) the 'facts, taken in the light most favorable to the plaintiff, demonstrate a constitutional violation,' and (2) the alleged right was clearly established at the time of the violation.") (quoting *Couden v. Duffy*, 446 F.3d 483, 492 (3d Cir. 2006)).

### 1.   Whether Backup Officer Defendants are Entitled to Qualified Immunity

Backup Officer Defendants argue that they are entitled to qualified immunity for all constitutional claims asserted against them, because they did not violate any clearly established law, committed no wrongdoing the night of Kevin's arrest or thereafter, and are not proper defendants for any claims. (Doc. 29, at 21). McKnight responds that, in making this argument, Backup Officer Defendants rely on their subjective beliefs about the legality of their actions, which is irrelevant to the qualified immunity objective inquiry. (Doc. 34, at 20-21).

McKnight alleges only that Defendants Cummings, Showers, and Cristillo created a supplemental report describing the scene at the arrest, that they complained to a supervisor about her presence at the scene of Kevin's arrest, and that they provided testimony at the July 2021 criminal trial. (Doc. 1, ¶¶ 59-67, 118). These allegations do not implicate any clearly established rights and McKnight fails to cite to any caselaw to the contrary. (Doc. 1, ¶¶ 59-67, 118; Doc. 34). Instead, she relies on her own legal conclusions that these actions violated

her rights. (Doc. 1, ¶¶ 59-67, 118). This Court cannot find any authority asserting, nor can it think of any reason why, these allegations would constitute wrongdoing or amount to a violation of McKnight's rights. (Doc. 1, ¶¶ 59-67, 118). Thus, Backup Officer Defendants are entitled to qualified immunity. *See Kelly v. Police Officer Barry Szamboti Warwick Twp. Police Dep't*, No. 18-CV-3094, 2018 WL 11606340, at *1 n.1 (E.D. Pa. Sept. 5, 2018) (dismissing a complaint when the court noted "we can find no allegations of wrongdoing on [a defendant's] part whatsoever"); *see also Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (holding that courts are "'not compelled to accept unsupported conclusions and unwarranted inferences'" about a party's wrongdoing) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007). Backup Officer Defendants' motion to dismiss all constitutional claims is **GRANTED**. (Doc. 18). Plaintiff's constitutional claims against Backup Officer Defendants are **DISMISSED without prejudice**. (Doc. 1, at 20-33); *Gainey v. City of Philadelphia*, No. CV 22-4143, 2023 WL 8258771, at *7-8 (E.D. Pa. Nov. 29, 2023) (finding officer was entitled to qualified immunity where plaintiff's allegations required the court to infer wrongdoing), *dismissed sub nom. Abdullah v. City of Philadelphia*, No. 24-1015, 2024 WL 3295607 (3d Cir. Jan. 19, 2024).

### 2.   Whether OAG Defendants and Defendant Kingsboro are entitled to Qualified Immunity

OAG Defendants and Defendant Kingsboro also contend that they are protected by qualified immunity for the Fourth Amendment claims against them. (Doc. 20, at 11; Doc. 29, at 20; Doc. 31, at 19; Doc. 32, at 24; Doc. 34, at 20; Doc. 43, at 22). Qualified immunity for the Fourth Amendment claims requires that the illegality of the relevant challenged act is "beyond debate." *Redclift v. Schuylkill Cnty.,* No. 4:21-CV-1866, 2022 WL 3973824, at *11 (M.D. Pa. Aug. 31, 2022); *see Wesby*, 583 U.S. at 64 ("precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to

apply"). Because the right to be free from arrest except upon probable cause is clearly established under the Fourth Amendment, the qualified immunity inquiry requires a determination of whether the allegations establish a violation of probable cause.[2] *Tereo v. Smuck*, No. 1:16-CV-1436, 2018 WL 4404676, at *6 (M.D. Pa. Sept. 17, 2018) ("The parties appropriately do not dispute the second prong: as we held at the Rule 12 stage, the right to be free from arrest except upon probable cause is clearly established. Hence, we need only determine whether the record establishes a violation of that right.") (citing *Andrews v. Scuilli*, 853 F.3d 690, 705 (3d Cir. 2017)) (internal citations omitted). Probable cause exists when "facts and circumstances within a police officer's knowledge would convince a reasonable person that an individual has committed an offense." *Tereo*, 2018 WL 4404676, at *6. To find a probable cause deficiency, a plaintiff must allege that the officer "'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions' [… and] that 'such statements or omissions are material, or necessary, to the finding of probable cause.'" *Tereo*, 2018 WL 4404676, at *6 (quoting *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000).

---

[2] The Third Circuit has questioned whether a malicious prosecution claim can be brought as a Fourteenth Amendment violation, providing such claims may be grounded in the text of the Fourth Amendment, rather than the more general notion of substantive due process. *See Torres v. McLaughlin*, 163 F.3d 169, 172 (holding that malicious prosecution claims may not be grounded in substantive due process under the Fourteenth Amendment) (citing *Albright v. Oliver*, 510 U.S. 266, 267-70 (1994)); *see also Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 792 (3d Cir. 2000) (holding that a defendant is entitled to qualified immunity from plaintiff's malicious prosecution claim under the Fourteenth Amendment's procedural due process clause due to the lack of a 'clearly established right'); *see also Thomas v. City of Phila.*, 290 F. Supp. 3d 371, 382 (E.D. Pa. 2018) ("The procedural due process right against malicious prosecution is not clearly established. The Supreme Court has not yet articulated such a right. And the Third Circuit Court of Appeals stopped short of deciding the right's 'viability' in 2014…").

In claims relating to an officer's alleged violation of the Fourth Amendment due to a lack of probable cause, "qualified immunity is premised upon an officer's reasonable belief in the accuracy of the facts [he provides] and the existence of probable cause based on those facts. This premise is negated 'where a[n ]officer causes an arrest to be made pursuant to a warrant that he obtained on the basis of statements he knew to be false or on the basis of statements he makes in reckless disregard of the truth....'" *Pinkney v. Meadville, Pa.*, 648 F. Supp. 3d 615, 645 (W.D. Pa. 2023), *aff'd,* 95 F.4th 743 (3d Cir. 2024) (quoting *Lippay v. Christos*, 996 F.2d 1490, 1502 (3d Cir. 1993)). Similarly, the Third Circuit has held that a reasonable officer should know they cannot "fabricate inculpatory evidence against a suspect or defendant." *Halsey v. Pfeiffer*, 750 F.3d 273, 296 (3d Cir. 2014). As such, it is clearly established that the use of false testimony or concealing evidence to further the likelihood of conviction violates a criminal defendant's constitutional rights. *Crosland v. City of Phila.*, 676 F. Supp. 3d 364, 373 (E.D. Pa. 2023) (noting the longstanding constitutional right to be free from convictions arising from perjured testimony or suppression of evidence) (internal citations omitted); *Dennis v. City of Phila.*, 19 F.4th 279, 292 (3d Cir. 2021) (noting that allegations that, in an effort to secure a plaintiff's conviction in a criminal matter, detectives "knowingly deceived the court [. . . ] through false testimony" violate that plaintiff's constitutional rights). These probable cause requirements apply to both police officers and detectives. *See Outlaw v. City of Phila.*, No. CV 21-1290, 2021 WL 3471168, at *5 (E.D. Pa. Aug. 6, 2021); *see also Dennis*, 19 F.4th at 292. The Court will review whether qualified immunity protects Defendants Ferrari and Heine and Defendant Kingsboro, considering each in turn.

a.   <u>Defendants Ferrari and Heine</u>

OAG Defendants argue that Defendants Ferrari and Heine are entitled to qualified immunity for the Fourth Amendment malicious prosecution and abuse of process claims asserted against them because "Plaintiff relies solely upon her own legal conclusions" that Defendants Ferrari and Heine violated clearly established law. (Doc. 40, at 9). Additionally, OAG Defendants aver that because the charges against McKnight "were bound over for trial," they were supported by probable cause and "taken to their normal and intended conclusion." (Doc. 40, at 7, 9-10). McKnight refutes this contention, responding that Defendants Ferrari and Heine failed to refer to exculpatory evidence during the preliminary hearing, namely the dashcam footage which showed McKnight's relaxed body language in contradiction to Defendant Kingsboro's account, and thus her arrest lacked probable cause. (Doc. 32, at 18, 28-29). She also contends that Defendants Heine and Ferrari took part in her investigation and prosecutions to pressure her to step down from office. (Doc. 32, at 18, 28). Thus, McKnight submits, her arrest and prosecution violated her right under the Fourth Amendment to be free from malicious prosecution and malicious abuse of process. (Doc. 32, at 28-29).

Individuals enjoy the clearly established right to be free from malicious prosecution based upon statements an officer or detective "makes in reckless disregard of the truth" and in furtherance of an illegitimate purpose. *Pinkney*, 648 F. Supp. 3d at 645; *see Richter v. Pa. State Police*, No. CV 15-775, 2018 WL 2984966, at *9 (W.D. Pa. June 14, 2018) ("an official's statements to a court concerning probable cause must disclose known material facts that would weigh against an arrest."); *see also Jennings v. Shuman,* 567 F.2d 1213, 1217 (3d Cir. 1977) (finding that malicious abuse of process occurs when an officer uses the criminal process for a purpose other than it was intended and clearly establishing such acts as a constitutional

violation). McKnight alleges that Defendants Ferrari and Heine intentionally failed to refer to or produce the exculpatory dashcam footage at the preliminary hearing, with "blatant disregard" for the truth, in order to pressure her to step down as a Magisterial District Judge. (Doc. 1, ¶¶ 93, 105-106, 162, 169-170). As a result of that failure, McKnight alleges that Judge Lippincott "bound the charges over for trial[.]" (Doc. 1, ¶ 113).

At this stage of the litigation, these averments are sufficient to establish that Defendants Ferrari and Heine violated clearly established law for the purposes of qualified immunity. *See Dayoub v. Aaron*, No. 2:12CV1770, 2013 WL 4810382, at *12 (W.D. Pa. Sept. 9, 2013) ("[p]laintiff alleges enough factual matter to raise the inference that officer knowingly gave false information [. . .] that contributed to the charges being filed[. . . ]without probable cause, causing plaintiff to be arrested and seized in violation of the Fourth Amendment. The right to be free from arrest and prosecution based only on false charges was well established."); *see also Booker v. Borough of N. Braddock,* No. 2:19-CV-01649-CCW, 2021 WL 37618, at *8 (W.D. Pa. Jan. 5, 2021) (denying qualified immunity to officers when plaintiff pled facts that charges were filed against her in an attempt to unlawfully intimidate her). As such, the Court finds Defendants Ferrari and Heine are not entitled to qualified immunity for the Fourth Amendment claims. OAG Defendants' motion to dismiss Plaintiff's Fourth Amendment malicious prosecution and abuse of process claims on qualified immunity grounds is **DENIED**. (Doc. 15); *see Dayoub*, 2013 WL 4810382, at *11-12 (finding that an officer is not entitled to qualified immunity for Fourth Amendment claims when plaintiff alleged that an officer knowingly gave false information during investigation, contributing to charges being filed against plaintiff).

b.   Defendant Kingsboro

Defendant Kingsboro also argues that she is entitled to qualified immunity for Fourth Amendment claims against her because she did not violate clearly established law. (Doc. 48, at 9). Defendant Kingsboro provides that to the extent that she wrote an incident report exaggerating or mischaracterizing McKnight's actions at the scene the night of Kevin's arrest, that report was created to document the arrest, not to file criminal charges against McKnight. (Doc. 48, at 9). McKnight submits that Defendant Kingsboro is not entitled to qualified immunity because her alleged failure to disclose exculpatory evidence during judicial proceedings violated clearly established law. (Doc. 32, at 28-29; Doc. 43, at 23).

McKnight further alleges that Defendant Kingsboro knowingly provided misleading facts and withheld exculpatory evidence when she filed her report of Kevin's arrest, testified at the preliminary hearing, and testified at the two-day trial. (Doc. 1, ¶¶ 54-57, 105-111, 118-124, 147, 160). According to the Complaint, Defendant Kingsboro was impeached at trial for offering conflicting testimony about McKnight's actions the night of her son's arrest. (Doc. 1, ¶¶ 119-123). McKnight correctly asserts that Defendant Kingsboro's misleading testimony violated her clearly established right to be free from prosecution based on false statements. (Doc. 1, ¶¶ 54-57, 105-111, 118-124, 133); *Richter,* 2018 WL 2984966, at *9 (holding that officials must disclose material facts that weigh against arrest). As such, Defendant Kingsboro is not entitled to qualified immunity for Fourth Amendment claims. *Pinkney*, 648 F. Supp. 3d at 645 (finding the right to be free from prosecution based on false statements to be clearly established for the purpose of a qualified immunity claim); *see also Booker,* 2021 WL 37618, at *8. Defendant Kingsboro's motion to dismiss Plaintiff's Fourth Amendment malicious prosecution and abuse of process claims on qualified immunity grounds is **DENIED**. (Doc. 17); *see Booker,* 2021 WL 37618, at *6-8 (denying qualified immunity to officers for malicious

prosecution and abuse of process claims when a plaintiff alleged that she was prosecuted without probable cause and in order to harass or intimidate her).

C.   SOVEREIGN IMMUNITY AND MCKNIGHT'S STATE LAW CLAIMS

OAG Defendants and Defendant Kingsboro posit that McKnight's state law claims must be dismissed because they are barred by sovereign immunity. (Doc. 20, at 25; Doc. 31, at 22; Doc. 32, at 29-30; Doc. 34, at 21; Doc. 43, at 23-24). OAG Defendants contend that because Moving Defendants are Commonwealth employees who took their allegedly unlawful actions in scope of their employment, they each enjoy sovereign immunity. (Doc. 20, at 25). Without addressing the alleged acts of other defendants, McKnight responds that Defendant Ferrari is not entitled to sovereign immunity because "his conduct was willful, fraudulent, or malicious." (Doc. 32, at 29-30). Further, that "[w]hen an investigator, like Defendant Ferrari, initiates criminal proceedings without probable cause, he loses sovereign immunity and is liable for malicious prosecution [sic]." (Doc. 32, at 30).

Under Pennsylvania's general provisions, "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa. C.S.A. § 2310. In actions against Commonwealth parties, the General Assembly has specifically waived immunity in cases of: (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. 42 Pa. C.S.A. § 8522.

With limited statutory exceptions, sovereign immunity bars state law tort claims like those alleged in this case, as Commonwealth employees are immune from liability for either negligence or intentional torts. *McGrath v. Johnson*, 67 F. Supp. 2d 499, 511 (E.D. Pa. 1999), *aff'd*, 35 F. App'x 357 (3d Cir. 2002) ("[t]he doctrine of sovereign immunity bars damage claims for state law torts against employees of Commonwealth agencies acting within the scope of their duties, except for several narrowly enumerated exceptions."); *see also Urella v. Pa. State Troopers Ass'n*, 628 F. Supp. 2d 600, 606 (E.D. Pa. 2008) ("Under 1 Pa. C.S.A. § 2310, the Commonwealth of Pennsylvania has explicitly retained its sovereign immunity from suit. The Pennsylvania legislature has waived sovereign immunity in only nine limited circumstances."). Courts have repeatedly concluded that claims for intentional infliction of emotional distress brought against Commonwealth employees arising out of actions taken by those employees within the scope of their official duties are barred by sovereign immunity. *See e.g.*, *Ray v. Pa. State Police*, 654 A.2d 140, 141 (Pa. Commw. Ct. 1995), *aff'd*, 676 A.2d 194 (1996) (holding that a state trooper acting within the scope of his duties is protected by sovereign immunity from intentional infliction of emotional distress claims) (citation omitted); *see also Sarin v. Magee*, 333 F. Supp. 3d 475, 481-82 (E.D. Pa. 2018) (holding the same). Likewise, the Commonwealth of Pennsylvania retains sovereign immunity against state law negligence claims and claims for malicious prosecution or abuse of process. 42 Pa. C.S.A. § 8522(b).

First, "unlike Eleventh Amendment immunity, sovereign immunity 'applies to Commonwealth employees in both their official and individual capacities.'" *Kintzel*, 965 F. Supp. 2d 601 at 606 (quoting *Larsen v. State Emps.' Ret. Sys.*, 553 F. Supp. 2d 403, 420 (M.D. Pa. 2008)); *see Deforte v. Borough of Washington*, 364 F. Supp. 3d 458, 486 (W.D. Pa. 2019)

("Sovereign immunity's protection, barring suit against state employees whenever they act within the scope of their official duties, applies regardless of whether Commonwealth employees are sued in their official or individual capacities."). Second, willful misconduct has been expressly denied as an exception to sovereign immunity. *See Brautigam v. Fraley*, 684 F. Supp. 2d 589, 594 (M.D. Pa. 2010). Sovereign immunity protection is undeniably broad, as "[u]nlike employees of municipal agencies who remain liable for intentional torts, employees of Commonwealth agencies are immune from liability even for intentional torts." *Mitchell v. Luckenbill*, 680 F. Supp. 2d 672, 682 (M.D. Pa. 2010) (citing *Dill v. Oslick*, No. Civ. A. 97-6753, 1999 WL 508675, at *4 (E.D. Pa. July 19, 1999)). As summarized in *Yakowicz v. McDermott*:

> the immunity defense provided by the General Assembly to local agencies and their employees in 42 Pa.C.S. §§ 8541–8564 is lost to local agency employees where their actions which cause injury constitute a "crime, actual fraud, actual malice or willful misconduct." 42 Pa.C.S. § 8550 ... The General Assembly has *not* included any such abrogation of the immunity provided to Commonwealth agency employees."

> 548 A.2d 1330, 1334 n.5 (Pa. Commw. Ct. 1988).

"Thus, despite the fact the claims alleged by Plaintiff[ ] might amount to willful misconduct, any defendant is still within the umbrella of immunity provided by 1 Pa. C.S.A. § 2310." *Brautigam*, 684 F. Supp. at 594.

None of the exceptions to sovereign immunity appears to have any application to the facts and circumstances of this particular case. *See* 1 Pa. C.S.A. § 2310. Whether Defendant Ferrari acted willfully is irrelevant because willfulness does not affect the immunity provided by 1 Pa. C.S.A. § 2310. (Doc. 43, at 24); *see Brautigam,* 684 F. Supp. 2d at 594 (plaintiffs "mistakenly argue that the immunity provided by [1 Pa. C.S.A. § 2310] is somehow abrogated with respect to individuals whose conduct constitutes a crime, actual fraud, actual malice or

willful misconduct. This is incorrect."); *see* 1 Pa. C.S.A. § 2310. Additionally, the "clearly established" test relates only to a qualified immunity, not a sovereign immunity, analysis. *Brautigam,* 684 F. Supp. 2d at 594 (not considering any clearly established test in a sovereign immunity evaluation); *see also Davison v. Kennedy*, No. CV 3:15-1373, 2016 WL 538906, at *9 (M.D. Pa. Feb. 11, 2016) (conducting a sovereign immunity analysis without discussing whether the relevant conduct was a clearly established violation of any right). Therefore, these claims are barred by the doctrine of sovereign immunity and thus are **DISMISSED with prejudice**. (Doc. 1); *see Davison*, 2016 WL 538906, at *9 (dismissing state law claims against parole officers who potentially engaged in willful misconduct because willfulness does not affect sovereign immunity). Moving Defendants' motions to dismiss all state law claims are **GRANTED**. (Doc. 15; Doc. 17; Doc. 18).

D.    EQUAL PROTECTION CLAIM CONSTRUED BY OAG DEFENDANTS

OAG Defendants construe Count I – Malicious Prosecution in Violation of Fourteenth Amendment as an Equal Protection claim. (Doc. 1, at 20; Doc. 20, at 13). OAG Defendants state, "All though [sic] not clearly expressed [by Plaintiff], OAG Defendants interpret Count I of the complaint to contain a selective prosecution/enforcement claim." (Doc. 20, at 13).  OAG Defendants argue that McKnight has not adequately stated a Fourteenth Amendment Equal Protection claim based on selective prosecution. (Doc. 20, at 13). OAG Defendants assert that McKnight "fails to aver any facts to demonstrate that she was treated differently from other, similarly situated persons" and that her allegation that Defendant Ferrari said "'it was her word as a Black woman against four (4) white officers' fails to demonstrate that Plaintiff's race or gender was the basis for [...selective prosecution]." (Doc. 20, at 13). McKnight, without acknowledging that she did not expressly plead a

violation of the Equal Protection Clause, adopts OAG Defendants' interpretation of her claim. (Doc. 1; Doc. 32, at 18-19). She posits that these statements "effectively classified Black women's testimony as not believable when compared to the testimony of white officers" and thus establish comparative evidence and reflect a discriminatory intent and racial animus by Defendants Ferrari and Heine. (Doc. 1; Doc. 32, at 18-19).

The Third Circuit has stated that selective prosecution is:

"a form of discriminatory law enforcement that has been held to violate the Equal Protection Clause of the Fourteenth Amendment since *Yick Wo v. Hopkins*, 118 U.S. 356, (1886), which held officials liable for 'illegal discrimination' when they 'applied and administered' a facially neutral law 'with an evil eye and an unequal hand.'"

*Davis v. Malitzki*, 451 F. App'x 228, 234 (3d Cir. 2011).

To bring a successful selective prosecution claim, a plaintiff must allege: (1) that persons similarly situated were not prosecuted; and (2) that the decision to prosecute was made on the basis of an unjustifiable standard, such as race, religion or "some other arbitrary factor." *Malitzki*, 451 F. App'x at 234 (quoting *U.S. v. Schoolcraft*, 879 F.2d 64, 68 (3d Cir. 1989)). To do so, the Complaint must contain allegations that McKnight was "treated differently from other similarly situated individuals." *Dombrosky v. Stewart*, 555 F. App'x 195, 197 (3d Cir. 2014) (citing *Dique v. N.J. State Police*, 603 F.3d 181, 188 (3d Cir. 2010)); *Perano v. Twp. of Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011) (at the motion to dismiss stage, a plaintiff "must allege facts sufficient to make plausible the existence of such similarly situated parties" to state an Equal Protection claim). "Persons are similarly situated under the Equal Protection Clause when they are alike in 'all relevant respects.'" *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir.2008) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). While a stray comment is insufficient to demonstrate direct evidence of discriminatory intent, a plaintiff can state an

Equal Protection claim by showing that an officer placed substantial reliance on an illegitimate criterion, such as race, when deciding to prosecute a plaintiff. *Grooms Hauling, LLC v. Robinson*, No. CV 18-5405, 2020 WL 374449, at *5 (E.D. Pa. Jan. 23, 2020)*; see also Kim-Foraker v. Allstate Ins. Co.*, 834 F. Supp. 2d 267, 277 (E.D. Pa. 2011) ("stray remarks are not direct evidence of discrimination.").

McKnight alleges that Defendants Ferrari and Heine each violated the Equal Protection Clause by commenting that the public would not believe her because of her race and gender. (Doc. 1, ¶ 134). The Court will address each in turn.

a.    Defendant Ferrari

McKnight alleges Defendant Ferrari made "continuous" remarks about her race and gender, rather than a stray comment. (Doc. 32, at 18). However, the Complaint only alleges one specific comment. (Doc. 1, ¶ 134). Additionally, she contends that Defendant Ferrari attempted to persuade her to resign from her position as a Magisterial District Judge by implying that the public would not believe evidence about the night of the arrest because she is a Black woman. (Doc. 1, ¶ 134). McKnight further alleges that Defendant Ferrari referred to her as a "girl" rather than a woman when making this remark. (Doc. 1, ¶ 134). The Court agrees that these allegations are sufficient to allege that Defendant Ferrari "classified Black women or 'girls' unfavorably as compared to white officers." (Doc. 32, at 19). However, at the motion to dismiss stage, an Equal Protection Clause claim requires a plaintiff "to make plausible the existence of such similarly situated parties." *Perano*, 423 F. App'x at 238 (quoting *Startzell,* 533 F.3d at 203 (3d Cir.2008). The white officers and Black suspects about which Defendant Ferrari comments are not alike in "all relevant respects" as required to show that they are similarly situated. *See Stradford v. Sec'y Pa. Dep't of Corr.*, 53 F.4th 67, 74 (3d Cir. 2022)

("[o]ther factors explaining disparate treatment will usually preclude persons from being similarly situated. In turn, the failure to identify similarly situated persons dooms an equal-protection claim.") (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006)); *see also Startzell,* 533 F.3d at 203 (3d Cir. 2008) ("[t]he [d]istrict [c]ourt held that [a]ppellants were not similarly situated to the Philly Pride volunteers because the volunteers were there as part of a permitted event that celebrated National Coming Out Day rather than as attendees with no relationship to the organizers whatsoever."). In other words, for her Equal Protection claim to be sustained, McKnight must have alleged that Defendant Ferrari treated her differently than other individuals being prosecuted. *Suber v. Guinta*, 927 F. Supp. 2d 184, 202 (E.D. Pa. 2013) ("'[t]he Plaintiffs must prove that [their establishment] was treated differently than similarly situated establishments that did not have predominantly minority clientele'"), *aff'd sub nom. Suber v. Wright*, 574 F. App'x 207 (3d Cir. 2014) (quoting *Desi's Pizza, Inc. v. City of Wilkes–Barre,* 2006 WL 2460881, at *22 (M.D. Pa. August 23, 2006)). Here, the fact that the more believable individuals to which Ferrari refers are not other non-Black suspects his office is prosecuting, but police officers, means McKnight has failed to identify similarly situated persons. *See Stradford*, 53 F.4th at 74. Accordingly, to the extent that Plaintiff asserted an Equal Protection claim against Defendant Ferrari, it is **DISMISSED without prejudice**. (Doc. 1, at 20); *see Davison*, 2016 WL 538906, at *5-6 (dismissing Equal Protection claims against officers when a plaintiff "has not identified other similarly situated individuals from whom he was treated differently"); *see also Fong v. City of Newark*, No. CV227243SDWMAH, 2023 WL 8947378, at *13 (D.N.J. Dec. 28, 2023) (dismissing an Equal Protection claim because "[t]he [c]omplaint has not identified who other 'similarly situated' persons are or what unequal treatment those similarly situated individuals received from [d]efendants.")

b.   Defendant Heine

McKnight has not alleged that Defendant Heine remarked about Plaintiff's race or gender. (Doc. 1). Instead, she avers that Defendant Heine adopted Defendant Ferrari's statements by declining to refute them. (Doc. 1, ¶¶ 88-94; Doc. 32, at 18). Courts in this Circuit require more than a failure to intervene to hold Defendant Heine liable for Defendant Ferrari's actions. *See Ogrod*, 598 F. Supp. 3d at 273 (finding that "failing to intervene in their fellow officers' actions" did not subject individual officers to liability); *see also Onyiah v. City of Phila.*, 660 F. Supp. 3d 407, 416 (E.D. Pa. 2023) ("we find that there is simply no pervasive authority on which we could conclude that [police officers] had a clearly established duty to intervene to prevent [p]laintiff's coerced confession or malicious prosecution."). Beyond that, Defendant Heine cannot be liable for her failure to intervene in Defendant Ferrari's alleged Equal Protection violation when, as explained *supra*, McKnight has not sufficiently alleged an Equal Protection claim against Defendant Ferrari in the first place. *See DARYL COOK, Plaintiff v. CHIEF GRIEVANCE OFFICER, et al., Defendants*, No. 3:23-CV-1046, 2024 WL 3824867, at *4 (M.D. Pa. Aug. 14, 2024) ("other defendants cannot be faulted for failing to intervene in an alleged constitutional violation" that itself is being dismissed for failure to state a claim.). Therefore, to the extent that McKnight has asserted an Equal Protection claim against Defendant Heine, it is **DISMISSED without prejudice**. (Doc. 1, at 20); *see DARYL COOK, 2024 WL 3824867*, at *4 (dismissing Equal Protection claims against officers that "appear to arise from defendants' failure to intervene" in alleged unconstitutional conduct which has also been dismissed).

E.   § 1985 CONSPIRACY CLAIMS AGAINST ALL MOVING DEFENDANTS

Moving Defendants argue that McKnight fails to state a conspiracy claim under § 1985 because she makes no allegations reflecting an understanding or agreement by Defendants to violate her civil rights. (Doc. 20, at 24; Doc. 29, at 15; Doc. 31, at 18-19). McKnight responds that she pleads facts necessary to "infer" an agreement among Moving Defendants to violate her rights. (Doc. 32, at 23; Doc. 34, at 17-18; Doc. 43, at 19-20). The Court finds this argument unavailing. Because § 1985 requires the "'intent to deprive of equal protection, or equal privileges and immunities,' a claimant must allege 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action' in order to state a claim." *Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)). To state a claim for conspiracy to commit malicious prosecution or abuse of process, "plaintiffs must allege that as a result of the [. . .] they were deprived of a civil right." *Nieves v. McSweeney*, 73 F. Supp. 2d 98 (D. Mass. 1999). Parties are "required to plead that an actual agreement existed among the parties" *Muhamman v. Cappellini*, 477 Fed. Appx. 935, 938 (3d Cir. 2012). There are some limitations to claims under § 1985. "A claim for conspiracy to commit a tort 'may not exist without an underlying tort.'" *Muth v. Woodring*, 755 Fed. Appx. 109, 115-16 (3d Cir. 2018) (quoting *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 405 (3d Cir. 2000)). Therefore, "[a]n official who is immune from suit for a § 1983 violation is also immune from liability under § 1985 for a claim of conspiracy to commit the conduct that is the subject of the § 1983 violation." *Ippolito v. Ahrene*, 2015 WL 6447153, at *6 (E.D. Pa. 2015). A conspiracy requires a meeting of the minds, which can be inferred with enough facts implying that an actual agreement was made. *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159 (3d Cir. 2010) ("in the conspiracy context, [the plausible pleading standard] require[s] 'enough factual matter (taken

as true) to suggest that an agreement was made,' in other words, 'plausible grounds to infer an agreement.'") (quoting *Twombly,* 550 U.S. at 556). This inference cannot just be "conceivable" but must be "plausible." *See Iqbal,* 556 U.S. at 680 (holding that factual pleadings must move claims "across the line from conceivable to plausible").

The Complaint does not contain sufficient factual allegations to suggest that Moving Defendants made an agreement was made to establish a conspiracy claim. (Doc. 1, at 22, 27). McKnight's allegations refer only to individualized conduct by each defendant. (Doc. 1). In her brief, McKnight avers that "Defendant Ferrari and Defendant Heine conspired with the Defendant Officers, under color of state law, and reached a mutual understanding to undertake a course of conduct to cover up what truly happened," but points to no factual allegations that support that conclusion. (Doc. 32, at 23). McKnight also states, "Defendant Ferrari and Defendant Kingsboro agreed to misrepresent the true facts at the preliminary hearing. After that, Defendant Ferrari and Defendant Heine proceeded to file criminal charges against Plaintiff," but again fails to point to any supporting allegations in the Complaint. (Doc. 1; Doc. 32, at 23). Further, the parallel acts by Moving Defendants do not amount to a plausible inference that Moving Defendants agreed together to commit any violation of McKnight's rights. *See Great W. Mining & Min. Co.*, 615 F.3d at 177 (declining to find conspiracy inference plausible when "[t]he complaint sets forth merely a 'conclusory allegation of agreement at some unidentified point[, which] does not supply facts adequate to show illegality.'") (quoting *Twombly*, 550 U.S. 557); *see also Twombly*, 550 U.S. at 566 (mere allegations of parallel conduct gives a court "no reason to infer that the companies had agreed among themselves to do what was only natural anyway."); *see also Durham v. City and County of Erie*, 171 F.App'x 412, 415 (3d Cir. 2006) ("Under the notice-pleading standard, a

complaint must include more than 'conclusory allegations of concerted action…' It must also contain at least some facts which could, if proven, permit a reasonable inference of a conspiracy to be drawn.") (quoting *Abbott v. Latshaw*, 164 F.3d 141, 148 (3d Cir. 1998)) (citations omitted)). Here, it would only be natural for police officers to write an incident report, testify when asked to, and participate in an investigation in which they were involved, all conduct McKnight discusses when alleging that Moving Defendants acted "in furtherance of the conspiracy." (Doc. 1, ¶¶ 146-154, 175-176); *see Twombly*, 550 U.S. at 566 (there is no conspiratorial agreement among defendants when they act in a way that is "only natural" given their jobs or duties). This Court cannot infer a meeting of the minds without more details that go beyond legal conclusions that a conspiracy occurred. Accordingly, Moving Defendants' motions to dismiss the § 1985 conspiracy claims are **GRANTED**. (Doc. 15; Doc. 17; Doc. 18). McKnight's § 1985 conspiracy claims are **DISMISSED without prejudice**. (Doc. 1, at 22, 27); *see Adams v. Teamsters Loc. 115*, 214 F. App'x 167, 176 (3d Cir. 2007) (dismissing conspiracy claims because plaintiff "does not provide any facts regarding the time, place, or conduct of the alleged conspiracy" and "'mere incantation of the words conspiracy or acted in concert does not talismanically satisfy [the pleading requirements]'"); *see Zimmer v. New Jersey Div. of Child Prot. & Permanency*, No. CV152524FLWDEA, 2016 WL 234844, at *13 (D. N.J. Jan. 20, 2016), *aff'd*, 741 F. App'x 875 (3d Cir. 2018) (dismissing conspiracy claims when allegations were "conclusory").

F.    ABUSE OF PROCESS CLAIMS AGAINST ALL MOVING DEFENDANTS

OAG Defendants argue that McKnight fails to state an abuse of process claim because her Complaint "is completely devoid of any fact that any [] Defendant took any action that was not in furtherance of an authorized criminal process to its conclusion" and does not assert

that the prosecution was continued for an unlawful purpose. (Doc. 20, at 22). Defendant Kingsboro submits that McKnight has made only "naked conclusory allegations" that Defendant Kingsboro provided a false narrative for an unlawful purpose. (Doc. 31, at 18). She states that OAG Defendants "perverted the process by demeaning Plaintiff on the basis of her race with the hope of getting her to step down from the bench." (Doc. 32, at 22). McKnight further responds that she properly stated an abuse of process claim because she alleged that "Defendant Kingsboro cooperated with Defendants Heine and Ferrari in prosecuting Plaintiff for the purpose of covering up Kingsboro's incomplete investigation and search of [Kevin] or otherwise trying to have Plaintiff step down from the bench." (Doc. 43, at 19).

"[A] section 1983 claim for malicious abuse of process lies where 'prosecution is [...] used for a purpose other than that intended by the law.'" *Rose v. Bartle*, 871 F.2d 331, 350 n.17 (3d Cir. 1989) (quoting *Jennings,* 567 F.2d at 1217). However, "there is no cause of action for abuse of process if the claimant, even with bad intentions, merely carries out the process to its authorized conclusion." *Cameron v. Graphic Mgmt. Assocs.*, 817 F. Supp. 19, 21 (E.D. Pa. 1992). Instead, there must be a showing of perversion. *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 304 (3d Cir. 2003). The Third Circuit has defined "perversion" as a use of legal process "primarily to accomplish a purpose for which the process was not defined" such that it "caused harm to the plaintiff." *Fireman's Fund Ins. Co*, 337 F.3d at 304. In *Jennings*, The Third Circuit explained the distinction between malicious abuse of process and malicious prosecution, also known as malicious use:

> We begin by distinguishing the justification given for issuance of process from the use to which process is put. The justification given may be either legitimate or illegitimate. If it is illegitimate, there is malicious use. Likewise, the use to which process is put can be either legitimate or illegitimate, and, if illegitimate,

there is malicious abuse. For example, if the defendant justifies issuance of process by untruthfully saying that the plaintiff solicited burglary and uses the process only to have him jailed, this is malicious use only. It is not malicious abuse because jailing is the purpose for which criminal process was intended. If the defendant has process issued based on the truthful statement that the plaintiff solicited burglary and then uses the threat of prosecution for purposes of extortion, this is malicious abuse only. Finally, if, as is alleged in the present case, the defendant has process served based on false statements and uses threat of prosecution for purposes of extortion, both torts will lie.

*Jennings*, 567 F.2d at 1218–19 (footnote omitted).

A state law abuse of process claim requires materially similar allegations. *Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa. Super. Ct. 1998). To state a claim for abuse of process under Pennsylvania law, a plaintiff must allege "that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." *Shiner*, 706 A.2d at 1236. "The gravamen of abuse of process is the perversion of the particular legal process for a purpose of benefit to the defendant, which is not an authorized goal of the procedure." *Shiner*, 706 A.2d at 1236. Thus, a plaintiff must allege "some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process[;] there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion ...." *Di Sante v. Russ Fin. Co.*, 380 A.2d 439, 441 (Pa. Super. Ct. 1977) (quotation omitted). Because the federal and state law abuse of process claims require similar factual allegations, this Court will address these claims simultaneously.

McKnight alleges that "[d]uring the investigation and subsequent malicious prosecution, the message continuously relayed to Judge McKnight from the OAG was that this was her word as a Black woman, or 'girl,' against four white officers and she should step down from the bench." (Doc. 1, ¶ 134). She additionally alleges she was repeatedly asked to

step down during the investigation and that OAG Defendants' and Defendant Kingsboro's "objective" in participating in the prosecution was to "force her to step down from office." (Doc. 1, ¶¶ 168, 170, 180, 182). McKnight further contends that OAG Defendants and Defendant Kingsboro intentionally scheduled the preliminary hearing directly before Plaintiff planned to announce her bid for re-election to adversely affect her chances. (Doc. 1, ¶¶ 104, 114; Doc. 43, at 19). She argues that the sequence of events show that the process was "designed to injure Plaintiff's reputation and destroy her career on the bench." (Doc. 32, at 22). These averments that OAG Defendants and Defendant Kingsboro used the prosecution to pressure McKnight to step down from the bench and damage her reputation prior to her campaign for re-election amount to allegations that they used the prosecution for purposes other than "[those] for which the criminal process was intended." *Jennings*, 567 F.2d at 1219; *see also Brown v. Johnston*, 675 F. Supp. 287, 290 (W.D. Pa. 1987) ("[w]hen process is used to effect an extortionate demand, or to cause the surrender of a legal right, or is used in any other way not so intended by proper use of the process, a cause of action for abuse of process can be maintained."). Therefore, McKnight has sufficiently pled abuse of process claims. (Doc. 1, at 26-30). Accordingly, OAG Defendants' and Defendant Kingsboro's motions to dismiss the Fourth Amendment abuse of process claims against them are **DENIED**. *Martin v. Finley*, No. 3:15-CV-1620, 2017 WL 626752, at *2-5 (M.D. Pa. Feb. 15, 2017) (denying a motion to dismiss abuse of process claims when a defendant allegedly used the threat of a criminal proceeding to an illegitimate end, namely, to coerce a plaintiff to enter into a civil settlement).

G.    MALICIOUS PROSECUTION CLAIMS AGAINST ALL MOVING DEFENDANTS

OAG Defendants argue that McKnight fails to state a malicious prosecution claim because all the criminal charges asserted against her were supported by probable cause, OAG

Defendants did not act maliciously, and McKnight did not suffer a deprivation of liberty. (Doc. 20, at 16-20). Defendant Kingsboro also argues that the claims against her fail because Defendant Kingsboro did not initiate the criminal proceedings, probable cause existed, and McKnight did not suffer deprivation of liberty. (Doc. 31, at 11-17). MckKnight responds that OAG Defendants filed a criminal complaint against her "knowing that they lacked probable cause," due to the failure to show dashcam footage at the preliminary hearing, and perpetuate "a false narrative of the events at the traffic stop." (Doc. 32, at 20). She further avers that Defendant Kingsboro can be liable for malicious prosecution even if she did not file the criminal charges because "the charges were precipitated" by Defendant Kingsboro's "exaggerated and misleading description[s]," which "vitiate the preliminary hearing's finding of probable cause." (Doc. 43, at 16). Finally, McKnight argues that her liberty was restricted "when she was forced to surrender herself, to be booked, and to pay bail." (Doc. 32, at 21).

To prevail on a malicious prosecution claim asserted pursuant § 1983 and under state law, a plaintiff "must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; [and] (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice." *Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)); *see Hilfirty v. Shipman*, 91 F.3d 573, 579 (3d Cir. 1996); *Tereo*, 2018 WL 4404676, at *6 (listing the elements of a malicious prosecution claim). For the malicious prosecution claim asserted under § 1983, there is an additional constitutional component requiring a plaintiff to show a loss of liberty beyond simply showing an unlawful arrest. *Merkle*, 211 F.3d at 792.

"Probable cause exists when 'the facts and circumstances within the [defendant's] knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed.'" *Stetser v. Jinks*, 572 F. App'x 85, 87 (3d Cir. 2014) (quoting *U.S. v. Cruz*, 910 F.2d 1072, 1076 (3d Cir. 1990)). "While 'the probable-cause standard is incapable of precise definition or quantification,' all interpretations of probable cause require a belief of guilt that is reasonable, as opposed to certain." *Halsey*, 750 F.3d at 299 (quoting *Wright v. City of Phila.*, 409 F.3d 595, 602 (3d Cir. 2005) (additional internal citations and quotations omitted)). Generally, the existence of probable cause is a factual issue for the jury, and a court should "exercise caution before granting a defendant summary judgment in a malicious prosecution case when there is a question of whether there was probable cause for the initiation of the criminal proceeding." *Halsey*, 750 F.3d at 300; *Montgomery v. De Simone*, 159 F.3d 120, 124 (3d Cir.1998). When determining probable cause, officers are not typically required to analyze the credibility of the evidence they rely upon. *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 467 (3d. Cir. 2016); *Eckman v. Lancaster City*, 529 F. App'x 185, 187 (3d Cir. 2013); *Stafford v. Morris*, 816 F. App'x 712, 717 (3d Cir. 2020). However, probable cause does not exist when substantial evidence of a witness' unreliability outweighs the probable cause that otherwise exists. *See Dempsey*, 834 F.3d at 479.

Here, McKnight has stated a plausible claim for malicious prosecution. She satisfies the first and second elements, that a defendant initiated a criminal proceeding against a plaintiff and that the the criminal proceeding ended in her favor, respectively, by alleging Defendants Ferrari, Heine, and Kingsboro initiated a criminal proceeding that ended in Plaintiff's favor. (Doc. 1, ¶¶ 188, 190). *Johnson,* 477 F.3d at 81-82. She also satisfies the third element, that the defendant initiated the proceeding without probable cause, by alleging that

Defendants Ferrari, Heine, and Kingsboro's investigation and prosecution of her lacked probable cause. (Doc. 1, ¶¶ 119-124, 144); *Johnson,* 477 F.3d at 81-82. McKnight contends Defendants Ferrari, Heine, and Kingsboro knowingly perpetuated a false narrative of the night of Kevin's arrest during the preliminary hearing and that Defendant Kingsboro was impeached for her inconsistent testimony at trial. (Doc. 1, ¶¶ 119-124, 144). Further, as discussed *supra,* McKnight adequately alleges that OAG Defendants and Defendant Kingsboro "'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions" that were "material" to "the finding of probable cause.'" *Tereo,* 2018 WL 4404676, at *6 (quoting *Wilson,* 212 F.3d at 786-87. Taking these allegations as true for the purpose of a motion to dismiss, McKnight has sufficiently alleged an absence of probable cause. *See Crosland,* 676 F. Supp. 3d 364, 379 (declining to dismiss a malicious prosecution claim because the relevant affidavit was "thinly sourced" with unreliable witness' statements.); *see also Brazil v. Scranton School Board, et al.*, 2023 WL 5916470, at *9 (M.D. Pa. Sept. 11, 2023) (denying a motion to dismiss a malicious prosecution claim because the complaint asserted probable cause was based on known "false information."); *Richter,* 2018 WL 2984966, at *9 (noting that when an official does not disclose to a court known facts that would weigh against arrest, probable cause may be negated). Regarding the fourth element, malice may be inferred from the absence of probable cause. *Carson v. Aurand*, No. 1:17-CV-01263, 2019 WL 2539447, at *8 (M.D. Pa. June 20, 2019) (*Hugee v. Pennsylvania R. Co.*, 101 A.2d 740, 743 (1954)). McKnight alleges the additional element required by § 1983 through her allegation that she suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. Thus, McKnight has stated a claim for malicious prosecution. *Barasky v. Dent*, No. 4:21-CV-02041, 2022 WL 14915557, at *6 (M.D. Pa. Oct.

25, 2022). Accordingly, OAG Defendants' and Defendant Kingsboro's motions to dismiss McKnight's malicious prosecution claims are **DENIED**. (Doc. 15; Doc. 17); *see Crosland,* 676 F. Supp. 3d 364, 379 (denying motion to dismiss a malicious prosecution claim because probable cause was based upon deficient testimony).

## IV.   LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Further, "[a] district court has 'substantial leeway in deciding whether to grant leave to amend.'" *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) (not precedential) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). In civil rights cases, District Courts are to follow this instruction "even [if] the plaintiff [is] represented by experienced counsel [and] never sought leave to amend." *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000) (citing *Dist. Council 47 v. Bradley*, 795 F.2d 310, 316 (3d Cir. 1986)). In this case, Plaintiff's Fourth Amendment malicious prosecution and abuse of process claims against Defendants Ferrari, Heine, and Kingsboro remain. (Doc. 1). However, all other claims are dismissed. Because leave to amend would not be futile regarding the conspiracy and Equal Protection claims, the Court will grant Plaintiff leave to file an amended complaint in an attempt to cure the deficiencies outlined herein. *Grayson*, 293 F.3d at 108.

## V.   CONCLUSION

For the foregoing reasons, Moving Defendants' motions to dismiss will be **GRANTED in part** and **DENIED in part**. (Doc. 15; Doc. 17; Doc. 18). All claims against Defendant Crist in Counts I through X are **DISMISSED with prejudice**. (Doc. 1, at 20-33).

All claims against Backup Officer Defendants are **DISMISSED without prejudice**. (Doc. 1, at 20-33). All state law claims in Counts VI through X are **DISMISSED with prejudice**. (Doc. 1, at 28-33). All Fourteenth Amendment malicious prosecution and abuse of process claims in Counts I through IV are **DISMISSED with prejudice.** (Doc. 1, at 20-27). To the extent Plaintiff asserted an Equal Protection claim in Count I, it is **DISMISSED without prejudice.** (Doc. 1, at 20). All conspiracy claims in Counts II and V are **DISMISSED without prejudice**. (Doc. 1, at 22-24, 27-28). Plaintiff will be granted leave to amend her complaint in accordance with this Memorandum.

An appropriate Order follows.

**BY THE COURT:**

Dated: September 6, 2024          *s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**