UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SONYA MCKNIGHT, | |
| Plaintiff, | CIVIL ACTION NO. 1:23-CV-01137 |
| v. | (MEHALCHICK, J.) |
| FARIDA KINGSBORO, et al., | |
| Defendants. | |

**MEMORANDUM**

Presently before the Court is a motion to dismiss filed by Defendants Anthony Cummings ("Cummings"), Chad Showers ("Showers"), and Dominic Cristillo ("Cristillo") (collectively, "Defendants"). (Doc. 61). On July 10, 2023, Plaintiff Sonya McKnight ("McKnight") initiated this action by filing a complaint against Defendants, as well as against Kristyne Crist ("Crist"), Kirsten Heine ("Heine"), Jerrett Ferrari ("Ferrari"), and Farida Kingsboro[1] ("Kingsboro"). (Doc. 1). McKnight filed the operative amended complaint on September 27, 2024. (Doc. 56). On October 30, 2024, Defendants filed a motion to dismiss (Doc. 61) and March 25, 2025, they filed a motion to dismiss for lack of prosecution. (Doc. 72). For the following reasons, Defendants' motions to dismiss shall be **GRANTED**.

I. **BACKGROUND AND PROCEDURAL HISTORY**

The following background is taken from McKnight's amended complaint. (Doc. 56).

---

[1] Kingsboro filed an answer to the amended complaint on October 31, 2024. (Doc. 63). Defendants Crist, Heine, and Ferrari were not named as defendants in the amended complaint and as such were terminated from this action.

McKnight is a Black woman who, at all times relevant to this matter, served as a Magisterial District Judge in Dauphin County, Pennsylvania. (Doc. 56, ¶¶ 4, 10). On or around February 22, 2020, at 2:00 AM, McKnight's son Kevin Baltimore ("Baltimore") was pulled over by Kingsboro in Harrisburg during a traffic stop. (Doc. 56, ¶¶ 9, 30). The traffic stop was recorded on dashcam video. (Doc. 56, ¶ 31). Upon being pulled over, Baltimore called McKnight, who arrived on the scene about ten minutes later. (Doc. 56, ¶¶ 32, 35). Around the same time, backup officers Showers and Cummings and transport officer Cristillo, arrived on the scene. (Doc. 56, ¶¶ 33-34).

Once she arrived at the scene, McKnight spoke with Kingsboro, who informed her that Baltimore was being arrested on an outstanding warrant and that drugs had been found on his person. (Doc. 56, ¶ 39). Kingsboro told McKnight that she could take possession of Baltimore's vehicle, so McKnight entered Baltimore's running vehicle in the presence of all officers, turned the vehicle off, and removed the keys. (Doc. 56, ¶¶ 38-42).

At the conclusion of the traffic stop, Kingsboro, Showers, Cummings, and Cristillo all wrote separate incident reports which included false accusations that McKnight was agitated, tried to find a knife in Baltimore's vehicle, and took possession of money and belongings that were recovered from Baltimore's person from Cristillo. (Doc. 56, ¶¶ 47-59). Kingsboro and Cumming's reports also omitted the fact that Kingsboro had given McKnight permission to enter the vehicle. (Doc. 56, ¶¶ 50, 56). Kingsboro, Showers, Cummings, and Cristillo also informed their supervisor of McKnight's presence at the scene. (Doc. 56, ¶ 60).

On or around March 5, 2020, the Dauphin County DOA's Criminal Investigation Division referred this matter to the Office of the Attorney General ("OAG") for investigation, where Ferrari was assigned to investigate the case. (Doc. 56, ¶¶ 64-65). Ferrari obtained a

2

copy of the dashcam video and interviewed Kingsboro, Showers, Cummings, and Cristillo separately without showing them the dashcam video. (Doc, 56, ¶¶ 66-67). On November 12, 2020, Ferrari then interviewed McKnight. (Doc. 1, ¶ 88). On December 16, 2020, soon after learning the OAG was going to criminally charge her, McKnight voluntarily surrendered with her attorney. (Doc. 56, ¶ 91) McKnight was subsequently charged with fabricating or tampering with evidence, obstructing with the administration of law, and official oppression and bail was set for $30,000. (Doc. 56, ¶¶ 93-94). McKnight was formally booked and posted bail. (Doc. 56, ¶ 95).

      Before her preliminary hearing, at which it would be determined if McKnight's charges would proceed to trial, McKnight and her attorney received the dashcam video. (Doc. 56, ¶ 96). However, Kingsboro and Ferrari did not mention nor introduce the dashcam footage at the preliminary hearing, which took place on February 19, 2021, before Judge Nicholas Lippincott. (Doc. 56, ¶¶ 97-100). At the preliminary hearing, only Kingsboro and Ferrari testified. (Doc. 56, ¶¶ 97-107). McKnight does not allege that Defendants were present at the hearing nor that they testified or had any role in the preliminary hearing. (Doc. 56, ¶¶ 97-107). Judge Nicholas Lippincott found enough factual allegations to bind the charges over for trial, stating, "there is enough to proceed here, and I think a lot of it comes down to, what was – what was in her mind?" (Doc. 56, ¶ 107). McKnight's case continued to trial. (Doc. 56, ¶¶ 107, 111). Shortly after the preliminary hearing, McKnight announced that she was running for re-election, and on May 19, 2021, she was reelected as a Magistrate Judge. (Doc. 56, ¶¶ 108, 110).

      McKnight's criminal trial took place on July 26, 2021, before Judge Stephen Lieberman. (Doc. 56, ¶ 111). Kingsboro, Showers, Cummings, and Cristillo testified. (Doc.

56, ¶ 112). After the Commonwealth rested, McKnight moved for judgment on acquittal. (Doc. 56, ¶ 121). Judge Stephen Lieberman heard arguments from both parties and acquitted McKnight on all counts. (Doc. 56, ¶ 122).

McKnight filed the initial complaint on July 10, 2023. (Doc. 1). Defendants filed a motion to dismiss McKnight's initial complaint on September 18, 2023, and on September 6, 2024, this Court granted that motion and dismissed the claims against Defendants without prejudice. (Doc. 18; Doc. 53). McKnight filed an amended complaint on September 27, 2024, asserting four counts under federal and state law. (Doc. 56). Defendants filed a motion to dismiss the amended complaint on October 30, 2024, along with a brief in support. (Doc. 61; Doc. 62). On March 25, 2025, Defendants filed a motion to dismiss for lack of prosecution and brief in support. (Doc. 72). McKnight has not filed a brief in opposition to Defendants' motions to dismiss, despite several extensions of time and Court Orders requiring her to do so. (Doc. 64; Doc. 65; Doc. 67; Doc. 68; Doc. 70). Accordingly, the motions to dismiss have been fully briefed and are ripe for disposition.

## II.   LEGAL STANDARDS

### A.   MOTION TO DISMISS STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule

12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d

1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

    B.    42 U.S.C. § 1983

Plaintiff asserts claims pursuant to 42 U.S.C. § 1983, which provides a private cause of action for violations of federal constitutional rights. The statute provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

42 U.S.C. § 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To succeed on a § 1983 claim, a plaintiff must demonstrate that the defendant, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). Further, "a defendant in a civil rights action 'must have personal involvement in the alleged wrongs to be liable,' and 'cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.'" *Baraka v. M,cGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (internal citations omitted). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence*.*" *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)

**III. DISCUSSION**

    A. MCKNIGHT IS DEEMED NOT TO OPPOSE THE MOTION TO DISMISS.

At the outset, under the Local Rules of this Court, McKnight should be deemed not to oppose the pending motion to dismiss since she has failed to timely oppose the motion. Local Rule 7.6 imposes an affirmative duty on a litigant to respond to motions and provides that "[a]ny party who fails to comply with this rule shall be deemed not to oppose which motion." Additionally, this Court ordered McKnight to file her brief in opposition or be deemed not to oppose the motion to dismiss on two occasions. (Doc. 68; Doc. 70). In this case, McKnight has not complied with Local Rule 7.6 or the Court's Orders to file opposition briefs. These procedural defaults compel the Court to consider:

> "[A] basic truth: we must remain mindful of the fact that 'the Federal Rules are meant to be applied in such a way as to promote justice. See Fed. R. Civ. P. 1. Often that will mean that courts should strive to resolve cases on their merits wherever possible. However, justice also requires that the merits of a particular dispute be placed before the court in a timely fashion ....'"
>
> *Lease v. Fishel*, 712 F. Supp. 2d 359, 371 (M.D. Pa. 2010) (quoting *McCurdy v. American Bd. of Plastic Surgery*, 157 F.3d 191, 197 (3d Cir. 1998)).

A failure on the Court's part to enforce compliance with the Rules, and impose the sanctions mandated by those Rules when they are repeatedly breached, "would actually violate the dual mandate which guides this court and motivates our system of justice: 'that courts should strive to resolve cases on their merits whenever possible [but that] justice also requires that the merits of a particular dispute be placed before the court in a timely fashion.'" *Lease*, 712 F. Supp. 2d at 371. Therefore, the Court is obligated to ensure that one party's refusal to comply with the Rules does not lead to an unjustified prejudice to those parties who follow the Rules.

Such basic principles of fairness apply here. In this case, McKnight failed to file a brief in opposition to the pending motions to dismiss even after being ordered to do so twice as to

7

the first motion and after being warned that her failure to file a brief in opposition may be construed as her concurring in the motion to dismiss. (Doc. 68; Doc. 70). These failures now compel the Court to deem McKnight to not oppose Defendants' motions to dismiss.

      B.    CONSIDERATION OF THE *POULIS* FACTORS WARRANTS A GRANT OF THE MOTIONS TO DISMISS.

Even though the Court has determined that McKnight is deemed not to oppose the motions, McKnight's failure to file a brief in opposition alone is not sufficient for the Court to dismiss the case. Rather, dismissal of a case as a sanction for failure to follow a court rule or court order is governed by the factors set forth in the seminal *Poulis* case. *Hernandez v. Palakovich*, 293 F. App'x 890, 894 (3d Cir. 2008) (citing *Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863, 868 (3d Cir. 1984)). Based on these factors, the Court finds that dismissal is warranted. Further, Federal Rule of Civil Procedure 41(b) provides that a claim or action may be involuntarily dismissed "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order." Further, the rule permits *sua sponte* dismissals by the court. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962); *Hewlett v. Davis*, 844 F.2d 109, 114 (3d Cir. 1988) (same). "The authority of a court to dismiss *sua sponte* for lack of prosecution has generally been considered an inherent power, governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link*, 370 U.S. at 630–31; *see also Mindek v. Rigatti*, 964 F.2d 1369 (3d Cir. 1992). Specifically, a plaintiff's failure to comply with a court order constitutes a failure to prosecute her action, and therefore her action is subject to dismissal pursuant to Fed. R. Civ. P. 41(b). A court's decision to dismiss for failure to prosecute is committed to the court's sound discretion and will not be disturbed absent an abuse of discretion. *See Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002).

8

In *Stackhouse v. Mazurkiewicz*, the Third Circuit reversed a district court's dismissal based on the *pro se* plaintiff's failure to file a brief in accordance with a local rule of court. *Stackhouse v. Mazurkiewicz*, 951 F.2d 29 (3d Cir. 1991). The Third Circuit stated that failure to obey the local rule should not form the basis for dismissal without an analysis of the merits of the case. *Stackhouse*, 951 F.2d at 30. The court noted that dismissal was not to be ruled out if the party was represented by an attorney and in fact did not oppose the motion. *Stackhouse*, 951 F.2d at 30. The court also noted: "Nor do we suggest that if a party fails to comply with the rules after a specific direction to comply from the court, the rule cannot be invoked. Thus, our holding is not broad." *Stackhouse*, 951 F.2d at 30.

Although this caveat from the *Stackhouse* case might suggest that the Court could grant the pending motion to dismiss based on McKnight's failure to file a brief in opposition after being ordered to do so by the Court, the Third Circuit has subsequently declined "to adopt an interpretation of *Stackhouse* under which a district court may dismiss a case solely because a plaintiff misses a briefing deadline set forth in a local rule or court-ordered briefing schedule." *Hernandez v. Palakovich*, 293 F. App'x 890, 895 (3d Cir. 2008). Rather, the Third Circuit has held that before dismissing a case as a sanction for failure to follow a court rule or court order, a court must consider the *Poulis* factors. *Hernandez*, 293 F. App'x at 894 (citing *Poulis*, 747 F.2d at 868; see also *Shuey v. Schwab*, 350 F. App'x 630, 633 (3d Cir. 2009) ("*Poulis* has been cited too often and is too deeply ingrained in the jurisdiction of this court and the direct courts of this circuit for a court to assume that a party's failure to respond to a motion to dismiss can be regarded as an abandonment of the claim. *Poulis* governs the District Court's decision to dismiss the Shuey's claim, and it was error to dismiss without first considering the *Poulis* factors."). Thus, the Court turns to a consideration of the *Poulis* factors.

In evaluating whether an action should be dismissed for failure to prosecute, a court must balance six factors:

> "(1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party ... was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense."

*Poulis*, 747 F.2d at 868.

The *Poulis* factors are not "a magic formula whereby the decision to dismiss or not to dismiss a plaintiff's complaint becomes a mechanical calculation." *Mindek*, 964 F.2d at 1373. No one factor is determinative and not all of the *Poulis* factors must be met to warrant dismissal. *Mindek*, 964 F.2d at 1373; *Hicks v. Feeney*, 850 F.2d 152, 156 (3d Cir. 1988). Instead, the decision must be made in the context of the court's extended contact with the litigant. Dismissal for failure to prosecute is appropriately labeled a "drastic sanction," however, because it is "deemed to be an adjudication on the merits, barring any further action between the parties." *Sebrell ex rel. Sebrell v. Phila. Police Dep't*, 159 F. App'x 371, 373 (3d Cir. 2005) (not precedential) (citing *Landon v. Hunt*, 977 F.2d 829, 833 (3d Cir. 1992); Fed. R. Civ. P. 41(b)). In light of this framework, the Court finds that a careful assessment of the *Poulis* factors in the case at bar weighs heavily in favor of dismissing this action only insofar as McKnight asserts her claims against Defendants.

### 1. McKnight's Personal Responsibility

Looking to the first *Poulis* factor, the extent of the party's personal responsibility, the delays in adjudicating the instant motion to dismiss are entirely attributable to McKnight. Because McKnight is a *pro se* litigant, she is solely responsible for prosecuting her claims. *See Hoxworth v. Blinder Robinson & Co.*, 980 F.2d 912, 920 (3d Cir. 1992). "As a general rule, a *pro*

*se* litigant is responsible for his failure to comply with court orders." *Lopez v. Cousins*, 435 F. App'x 113, 116 (3d Cir. 2011) (not precedential); *see also Emerson*, 296 F.3d at 191; *Winston v. Lindsey*, Civ. No. 09-224, 2011 WL 6000991, at *2 (W.D. Pa. Nov. 30, 2011) (concluding that a *pro se* litigant "bears all of the responsibility for any failure to prosecute his claims"). McKnight has neglected to litigate her claims against Defendants and failed to file a brief in opposition to Defendants' pending motion to dismiss, as required by the Local Rules and as so ordered by the Court. *See Lookingbill*, 2015 WL 4077999, at *4. On November 4, 2024, the Court granted McKnight an initial extension of time to file a brief in opposition by December 13, 2024. (Doc. 65). On December 3, 2024, the Court granted McKnight a 60 day stay in order to allow her to proceed *pro se* or retain new counsel after her attorney withdrew, which she did not do. (Doc. 68). In the December 3, 2024 Order, the Court directed McKnight to file a brief in opposition to Defendants' motion by February 10, 2025, and notified that failure to timely file her brief may result in the motion being deemed unopposed and granted without a merits analysis. (Doc. 68). McKnight was again directed to file an opposition brief on February 19, 2025. (Doc. 70). As of the date of this Memorandum Opinion, McKnight has failed to file a brief in opposition or comply with the Court's Orders. Accordingly, the first *Poulis* factor weighs in favor of dismissal.

### 2. Prejudice to Defendants

As for the second *Poulis* factor, a finding of prejudice does not require "irremediable harm." *Adams v. Trs. of N.J. Brewery Emps.' Pension Tr. Fund*, 29 F.3d 863, 873-74 (3d Cir. 1994). Rather, "the burden imposed by impeding a party's ability to [effectively prepare] a full and complete trial strategy is sufficiently prejudicial." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003). Examples of prejudice are "the irretrievable loss of evidence, the inevitable

dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." *Scarborough v. Eubanks*, 747 F.2d 871, 876 (3d Cir. 1984).

Here, the Court finds that McKnight's failure to engage with litigating Defendants' motion to dismiss or comply with the Court's Orders now wholly frustrates and delays resolution of the claims against Defendants. Going forward, such failure to litigate would prejudice Defendants, who without timely responses by McKnight could not seek a timely resolution of the claims against them. *See Vessio v. Saw Creek Ests. Cmty. Ass'n, Inc.*, No. CIV.A. 3:13-2068, 2014 WL 6065924, at *5 (M.D. Pa. Nov. 6, 2014) (finding the second Poulis factor favors dismiss when a plaintiff failed to engage in litigating certain claims "other than to repeatedly request extensions of time to respond to the instant motion to dismiss"); *Azubuko v. Bell National Organization*, 243 F. App'x 728 (3d Cir. 2007) (failure to file amended complaint prejudices defense and compels dismissal). Accordingly, the second *Poulis* factor weighs in favor of dismissal.

### 3. History of Dilatoriness

Turning to the third *Poulis* factor, "[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders." *Adams*, 29 F.3d at 874; *see also Emerson*, 296 F.3d at 191 (per curium) (finding a history of dilatory conduct where the plaintiff repeatedly requested stays and failed to comply with court-mandated deadlines). Conversely, "conduct that occurs one or two times is insufficient to demonstrate a history of dilatoriness." *Briscoe v. Klaus*, 538 F.3d 252, 261 (3d Cir. 2008) (citation omitted). In deciding whether a history of dilatory conduct exists, this Court must evaluate "a party's problematic acts ... in light of its behavior over the life of the case." *Adams*, 29 F.3d at 875. Here, the Court has

afforded McKnight more than one extension of time to file her brief in opposition to Defendants' motion to dismiss. (Doc. 65; Doc. 68; Doc. 70). McKnight has failed to timely file an opposition brief despite the fact that the Court warned her that if she failed to file a brief, the Court may deem her to have abandoned her claims against Defendants and not oppose the instant motion to dismiss. (Doc. 68; Doc. 70). Additionally, McKnight's only engagement with resolving the instant motion to dismiss has been to request extensions and stays of the deadlines related thereto. (Doc. 64; Doc. 67). In sum, McKnight was given multiple opportunities to file a brief in opposition, but she still failed to do so. Accordingly, McKnight's actions demonstrate a history of dilatoriness that weighs in favor of dismissal.

### 4. Willful Conduct or Bad Faith

The fourth *Poulis* factor requires the Court to consider whether McKnight's conduct reflects mere inadvertence or negligence, as opposed to "strategic," "intentional or self-serving behavior." *Adams*, 29 F.3d at 875-76. "Under this factor, the District Court must consider whether the conduct was the type of willful or contumacious behavior which [can be] characterized as flagrant bad faith." *Briscoe*, 538 F.3d at 262 (quotation omitted). Here, McKnight was repeatedly ordered to file a brief in opposition to Defendants' motion to dismiss, but she has failed to do so. (Doc. 68; Doc. 70). Moreover, McKnight was warned of the possible consequences of failing to file a brief in opposition. (Doc. 65; Doc. 68; Doc. 70). At this point in the case, McKnight has failed to comply with the Court's instructions directing her to take specific actions in this case and advising her how to do so. The Court is thus compelled to conclude that his actions are not accidental or inadvertent, but rather reflect an intentional disregard for the Court's directives and this case. *See Gilyard v. Dauphin Cty. Work*

*Release*, No. 10-1657, 2010 WL 5060236, at *2 (M.D. Pa. Dec. 6, 2010). Thus, the fourth *Poulis* factor weighs in favor of dismissal.

### 5.  Availability of Alternative Sanctions

The fifth *Poulis* factor examines the effectiveness of sanctions other than dismissal. 747 F.2d at 868. Generally, "sanctions less than dismissal [are] ineffective when a litigant, such as [Shehadeh], is proceeding *pro se*." *See Lopez*, 435 F. App'x at 116; *Emerson*, 296 F.3d at 191 (per curium); *Nowland v. Lucas*, No. 1:10-CV-1863, 2012 WL 10559, at *6 (M.D. Pa. Jan. 3, 2012) ("This case presents such a situation where the plaintiff's status as a *pro se* litigant severely limits the ability of the court to utilize lesser sanctions to ensure that this litigation progresses in an orderly fashion."). Under the instant circumstances where the Court is faced with the lack of cooperation on the part of the individual who brought the claims against Defendants, the only appropriate sanction is dismissal of those certain claims with which McKnight has failed to engage. Otherwise, the case would linger indefinitely on the Court's docket. McKnight is proceeding *pro se* but not in *forma pauperis*. Therefore, it is possible that monetary sanctions, including attorney's fees and costs, would be an effective sanction in this case. However, McKnight's failure to comply with the Court's Orders leads to an inference that further orders to her would not be effective. *See Vessio*, 2014 WL 6065924, at *8 (finding that the fifth *Poulis* factor weighs in favor of dismissal when a pro se litigant has failed to comply with other court orders). In this case, whether alternative sanctions would be effective is a difficult determination to make, but one that weighs slightly in favor of dismissal given McKnight's failure to comply with other Court orders. (Doc. 68; Doc. 70).

6.   **Meritoriousness of McKnight's Claims Against Defendants**

The final *Poulis* factor asks the Court to consider the meritoriousness of McKnight's claims against Defendants. 747 F.2d at 868. A claim is deemed meritorious when "the allegations of the pleadings, if established at trial, would support recovery by plaintiff ...." *Poulis*, 747 F.2d at 870. "Generally, in determining whether a plaintiff's claim is meritorious, [courts] use the standard for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Briscoe*, 538 F.3d at 263 (citing *Poulis*, 747 F.2d at 869-70). Defendants have presented strong arguments for why the Court should dismiss McKnight's claims against them. (Doc. 62).

In her initial complaint, McKnight alleged only that Defendants created a supplemental report describing the scene at Baltimore's arrest, that they complained to a supervisor about her presence at the scene of Baltimore's arrest, and that they provided testimony at the July 2021 criminal trial. (Doc. 1, ¶¶ 59-67, 118). The Court found that such allegations did not implicate any clearly established rights and concluded that McKnight relied on her own legal conclusions that these actions violated her rights. (Doc. 1, ¶¶ 59-67, 118; Doc. 34). The Court could not find any authority asserting that these allegations would constitute wrongdoing or amount to a violation of McKnight's rights, nor could the Court conclude as much. (Doc. 1, ¶¶ 59-67, 118). Thus, the undersigned dismissed the claims against Defendants on the grounds of qualified immunity. *See Kelly v. Police Officer Barry Szamboti Warwick Twp. Police Dep't*, No. 18-CV-3094, 2018 WL 11606340, at *1 n.1 (E.D. Pa. Sept. 5, 2018) (dismissing a complaint when the court noted "we can find no allegations of wrongdoing on [a defendant's] part whatsoever"); *see also Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (holding that courts are "'not compelled to accept unsupported conclusions

15

and unwarranted inferences'" about a party's wrongdoing) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007).

On September 6, 2024, when the Court previously dismissed the claims against Defendants, the undersigned also granted McKnight leave to file an amended complaint (Doc. 53), which she did on September 27, 2024. (Doc. 56). In the amended complaint, McKnight largely asserts the same claims against Defendants that this Court already deemed insufficient to survive a motion to dismiss. (Doc. 1; Doc. 53; Doc. 56). McKnight reiterates her allegations that Defendants violated her Fourth Amendment rights when "without probable cause, they provided false reports and testimony regarding [McKnight's] action at the traffic stop"; "gave false testimony leading directly to the indictment of [McKnight]," and "provided false reports and testimony regarding [McKnight's] action at the traffic stop, and caused her prosecution." (Doc. 56 ¶¶ 125, 132, 144, 162). She also includes the primary material addition to her allegations when she avers that Defendants complained to a supervisor about McKnight's presence at the scene of Baltimore's arrest "so that [McKnight] would face criminal charges." (Doc. 56, ¶ 61). However, these allegations, while more specific than the barebones allegations in her initial complaint, are conclusory for both an abuse of process claim and a malicious prosecution claim.[2] McKnight provides no averments about

---

[2] Further, McKnight cannot plausibly plead a malicious prosecution violation against Defendants for a second reason: because any such claim requires a showing that the defendant initiated a criminal proceeding. *See Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007) (holding that to prevail on a malicious prosecution claim asserted pursuant § 1983 and under state law, a plaintiff "must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; [and] (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice.") (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)). McKnight does not allege that any Defendant initiated a criminal proceeding, nor can she. (Doc. 56). In fact, according to the amended complaint, Defendants provided no testimony whatsoever at the preliminary hearing which led to the determination that charges against

exactly how the complaint or any alleged falsehoods in their written reports[3] would have increased the likelihood that McKnight would face criminal charges. (Doc. 56, ¶¶ 47-59). Thus, her allegation that they made false statements or complained to their supervisor so that McKnight would face criminal charges is a "'bald assertion[]'" that *Iqbal* and *Twombly* prohibit a court from accepting. *Morse*, 132 F.3d at 906; *Iqbal*, 556 U.S. at 679. As such, the Court finds that the sixth *Poulis* factor favors dismissal.

### 7. Balancing of *Poulis* Factors

To reiterate, when weighing the *Poulis* factors, there is no "magic formula" or "mechanical calculation" that automatically warrants dismissal. *Briscoe*, 538 F.3d at 263. Quite the contrary, the Court is guided by the Third Circuit's warning that "no single *Poulis* factor is dispositive," and that "not all of the *Poulis* factors need be satisfied in order to dismiss a complaint." *Ware*, 322 F.3d at 222; *see also Mindek*, 964 F.2d at 1373. Here, on balance, the *Poulis* factors weigh heavily in favor of dismissal of the claims against Defendants. Accordingly, the claims against Defendants shall be **DISMISSED**. (Doc. 56).

## IV.  LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir.

---

McKnight should proceed to trial. (Doc. 56, ¶ 107). Accordingly, Counts I, II, and III, all malicious prosecution claims, would fail against Defendants, as McKnight cannot show that Defendants initiated a prosecution against her.

[3] Specifically, according to the amended complaint, those falsehoods were that McKnight took possession of her son's belongings, such as money recovered from his person, something that, according to Defendants' statements, no officer opposed. (Doc. 56, ¶¶ 47-59).

2002). Further, "[a] district court has 'substantial leeway in deciding whether to grant leave to amend.'" *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) (not precedential) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). In civil rights cases, District Courts are to follow this instruction "even [if] the plaintiff [is] represented by experienced counsel [and] never sought leave to amend." *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000) (citing *Dist. Council 47 v. Bradley*, 795 F.2d 310, 316 (3d Cir. 1986)). In this case, leave to amend would be futile, as the operative complaint in this matter is McKnight's amended complaint as asserted against Defendants, and McKnight has failed to respond to the motions to dismiss the amended complaint and thus been deemed not to oppose as much. Accordingly, the Court will not grant McKnight further leave to amend at this juncture.

V. CONCLUSION

For the foregoing reasons, the motions to dismiss are deemed unopposed and will be **GRANTED.** (Doc. 61; Doc. 72). All claims against the moving Defendants are **DISMISSED**. (Doc. 56). The Clerk of Court is directed to **CLOSE** this action.

An appropriate Order follows.

BY THE COURT:

Dated: June 18, 2025

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**