UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

SONYA MCKNIGHT,

          Plaintiff,

v.

FARIDA KINGSBORO, et al.,

          Defendants.

CIVIL ACTION NO. 1:23-CV-01137

(MEHALCHICK, J.)

## MEMORANDUM

Presently before the Court is Defendant Farida Kingsboro's ("Kingsboro") motion to dismiss. (Doc. 82). On July 10, 2023, Plaintiff Sonya McKnight ("McKnight") initiated this action by filing a complaint against Kingsboro, as well as against Defendants Anthony Cummings ("Cummings"), Chad Showers ("Showers"), Dominic Cristillo ("Cristillo"), Kristyne Crist ("Crist"), Kirsten Heine ("Heine"), and Jerrett Ferrari[1] ("Ferrari"). (Doc. 1). McKnight filed the operative amended complaint on September 27, 2024. (Doc. 56). On July 30, 2025, Kingsboro filed a motion to dismiss due to McKnight's failure to prosecute. (Doc. 82). For the following reasons, Kingsboro's motion to dismiss shall be **GRANTED**.

I.    **BACKGROUND AND PROCEDURAL HISTORY**

The following background is taken from McKnight's amended complaint. (Doc. 56). McKnight is a Black woman who, at all times relevant to this matter, served as a Magisterial District Judge in Dauphin County, Pennsylvania. (Doc. 56, ¶¶ 4, 10). On or around February 22, 2020, at 2:00 AM, Kingsboro pulled over McKnight's son, Kevin Baltimore ("Baltimore")

---

[1] Defendants Cummings, Showers, and Cristillo were dismissed from this action when the Court granted their unopposed motions to dismiss for failure to prosecute. (Doc. 61; Doc. 72). Defendants Crist, Heine, and Ferrari were not named as defendants in the amended complaint and as such were terminated from this action. (Doc. 56).

during a traffic stop in Harrisburg. (Doc. 56, ¶¶ 9, 30). A dashcam video recorded the traffic stop. (Doc. 56, ¶ 31). Upon being pulled over, Baltimore called McKnight, who arrived on the scene about ten minutes later. (Doc. 56, ¶¶ 32, 35). Around the same time, backup officers Showers and Cummings and transport officer Cristillo arrived on the scene. (Doc. 56, ¶¶ 33-34). At the scene, Kingsboro informed McKnight that she arrested Baltimore on an outstanding warrant and found drugs on his person. (Doc. 56, ¶ 39). Kingsboro also told McKnight that McKnight could take possession of Baltimore's vehicle, so McKnight entered Baltimore's running vehicle in the presence of all officers, turned the vehicle off, and removed the keys. (Doc. 56, ¶¶ 38-42). At the conclusion of the traffic stop, Kingsboro, Showers, Cummings, and Cristillo all wrote separate incident reports which included false accusations that McKnight was agitated, tried to find a knife in Baltimore's vehicle, and took possession of money and belongings that were recovered from Baltimore's person from Cristillo. (Doc. 56, ¶¶ 47-59). Kingsboro and Cummings also omitted in their reports the fact that Kingsboro permitted McKnight to enter the vehicle. (Doc. 56, ¶¶ 50, 56). Kingsboro, Showers, Cummings, and Cristillo also informed their supervisor of McKnight's presence at the scene. (Doc. 56, ¶ 60).

On or around March 5, 2020, the Dauphin County DOA's Criminal Investigation Division referred this matter to the Office of the Attorney General ("OAG") for investigation, where Ferrari was assigned to investigate the case. (Doc. 56, ¶¶ 64-65). Ferrari obtained a copy of the dashcam video and interviewed Kingsboro, Showers, Cummings, and Cristillo separately without showing them the dashcam video. (Doc, 56, ¶¶ 66-67). On November 12, 2020, Ferrari interviewed McKnight. (Doc. 1, ¶ 88). On December 16, 2020, soon after learning the OAG was planning to criminally charge her, McKnight voluntarily surrendered

2

with her attorney. (Doc. 56, ¶ 91) McKnight was subsequently charged with fabricating or tampering with evidence, obstructing with the administration of law, and official oppression and bail was set for $30,000. (Doc. 56, ¶¶ 93-94). McKnight was formally booked and posted bail. (Doc. 56, ¶ 95). Before her preliminary hearing, at which the criminal court would determine if McKnight's charges would proceed to trial, McKnight and her attorney received the dashcam video. (Doc. 56, ¶ 96). However, Kingsboro and Ferrari did not mention nor introduce the dashcam footage at the preliminary hearing, which took place on February 19, 2021, before Judge Nicholas Lippincott. (Doc. 56, ¶¶ 97-100). At the preliminary hearing, only Kingsboro and Ferrari testified. (Doc. 56, ¶¶ 97-107). Judge Nicholas Lippincott found enough factual allegations to bind the charges over for trial. (Doc. 56, ¶ 107). Shortly after the preliminary hearing, McKnight announced that she was running for re-election, and on May 19, 2021, she was reelected as a Magistrate Judge. (Doc. 56, ¶¶ 108, 110).

McKnight's criminal trial took place on July 26, 2021, before Judge Stephen Lieberman. (Doc. 56, ¶ 111). Kingsboro, Showers, Cummings, and Cristillo testified. (Doc. 56, ¶ 112). After the Commonwealth rested, McKnight moved for judgment on acquittal. (Doc. 56, ¶ 121). Judge Stephen Lieberman heard arguments from both parties and acquitted McKnight on all counts. (Doc. 56, ¶ 122).

McKnight commenced this action on July 10, 2023, by filing a complaint asserting civil rights and state law claims. (Doc. 1). McKnight's counsel, Catherine Hockensmith, Esquire filed a motion to withdraw as attorney on August 17, 2023, which the Court granted. (Doc. 12; Doc. 13). On September 27, 2024, McKnight filed an amended complaint. (Doc. 56). Defendants, Showers, Cummings, and Cristillo (hereinafter, the "Backup Officer Defendants") filed a motion to dismiss McKnight's amended complaint on October 30, 2024

(Doc. 61). Kingsboro filed an answer to the amended complaint with affirmative defenses on October 31, 2024. (Doc. 63). McKnight's remaining counsel, Leticia Chavez-Freed, Esquire filed a motion to withdraw as attorney on November 26, 2024, which the Court granted. (Doc. 66; Doc. 68).

On December 3, 2024, the Court issued an Order staying all existing deadlines for sixty (60) days and directing McKnight to retain new counsel within thirty (30) days and to file a response to the Backup Officer Defendants' motion to dismiss by February 10, 2025. (Doc. 68). On February 19, 2025, the Court issued an additional order directing McKnight to file a brief in opposition to the Backup Officer Defendants' motion to dismiss by March 5, 2025. (Doc. 70). On March 25, 2025, the Backup Officer Defendants filed a motion to dismiss due to McKnight's failure to prosecute, which the Court granted on June 18, 2025. (Doc. 72; Doc. 79). On April 4, 2025, after McKnight failed to retain new counsel or submit Rule 26 initial disclosures, Kingsboro's counsel sent a letter to McKnight at the address of record requesting that she voluntarily withdraw all claims against Kingsboro. (Doc. 82, ¶ 14). The letter was returned as "not deliverable" by the United States Postal Service. (Doc. 82, ¶ 15). On July 30, 2025, Kingsboro filed a motion to dismiss for lack of prosecution and brief in support. (Doc. 82; Doc. 83). McKnight has not filed a brief in opposition to Kingsboro's motion to dismiss. Accordingly, the motion to dismiss has been fully briefed and is ripe for disposition.

**II.    LEGAL STANDARDS**

    A.    MOTION TO DISMISS STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first

4

take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting

*Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

    B.    42 U.S.C. § 1983

Plaintiff asserts claims pursuant to 42 U.S.C. § 1983, which provides a private cause of action for violations of federal constitutional rights. The statute provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

42 U.S.C. § 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To succeed on a § 1983 claim, a plaintiff must demonstrate that the defendant, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). Further, "a defendant in a civil rights action 'must have personal involvement in the alleged wrongs to be liable,' and 'cannot be

held responsible for a constitutional violation which he or she neither participated in nor approved.'" *Baraka v. M,cGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (internal citations omitted). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence*." Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

  C. Failure to Prosecute

Federal Rule of Civil Procedure 41(b) provides that an action may be involuntarily dismissed "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order." Further, the rule permits *sua sponte* dismissals by the court. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962); *see also Hewlett v. Davis*, 844 F.2d 109, 114 (3d Cir. 1988) (same). "The authority of a court to dismiss *sua sponte* for lack of prosecution has generally been considered an inherent power, governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link*, 370 U.S. at 630–31; *see also Mindek v. Rigatti*, 964 F.2d 1369 (3d Cir. 1992). Specifically, a plaintiff's failure to comply with a court order constitutes a failure to prosecute their action, and therefore the action is subject to dismissal pursuant to Fed. R. Civ. P. 41(b). A court's decision to dismiss for failure to prosecute is committed to the court's sound discretion and will not be disturbed absent an abuse of discretion. *See Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002). In evaluating whether an action should be dismissed for failure to prosecute, a court must balance six factors:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party . . . was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.
>
> *Poulis v. State Farm Fire & Cas. Co.,* 747 F.2d 863, 868 (3d Cir. 1984).

7

The *Poulis* factors are not "a magic formula whereby the decision to dismiss or not to dismiss a plaintiff's complaint becomes a mechanical calculation." *Mindek*, 964 F.2d at 1373. No one factor is determinative and not all of the *Poulis* factors must be met to warrant dismissal. *Mindek*, 964 F.2d at 1373; *see also Hicks v. Feeney*, 850 F.2d 152, 156 (3d Cir. 1988). Instead, the decision must be made in the context of the court's extended contact with the litigant. Dismissal for failure to prosecute is appropriately labeled a "drastic sanction," however, because it is "deemed to be an adjudication on the merits, barring any further action between the parties." *Sebrell ex rel. Sebrell v. Phila. Police Dep't*, 159 F. Appx. 371, 373 (3d Cir. 2005) (not precedential) (citing *Landon v. Hunt,* 977 F.2d 829, 833 (3d Cir. 1992); Fed. R. Civ. P. 41(b)).

### III.   DISCUSSION

#### A.   KINGSBORO'S MOTION TO DISMISS IS DEEMED UNOPPOSED

At the outset, under the Local Rules of this Court, McKnight should be deemed not to oppose the pending motion to dismiss since she has failed to timely oppose the motion. Local Rule 7.6 imposes an affirmative duty on a litigant to respond to motions and provides that "[a]ny party who fails to comply with this rule shall be deemed not to oppose such motion." "[L]ocal rules play 'a vital role in the district courts' efforts to manage themselves and their dockets.'" *Smith v. Oelenschlager*, 845 F.2d 1182, 1184 (3d Cir. 1988) (quoting *Eash v. Riggins Trucking Inc.*, 757 F.2d 557, 570 (3d Cir. 1985)). The Court is obligated to ensure parties who follow the local rules are not prejudiced by those who violate them. *See United States v. Eleven Vehicles, Their Equip. & Accessories*, 200 F.3d 203, 215 (3d Cir. 2000) (finding a court may only decline to enforce local rules where "doing [so] does not unfairly prejudice a party who has relied on the local rule to his detriment"); *see also Beckett v. Closton,* No. 1:24-CV-00476, 2025 WL 308121, at *1 (M.D. Pa. Jan. 27, 2025) (stating "the court must ensure

that a party's failure to comply with the rules does not prejudice those parties who follow the rules").

In this case, McKnight failed to file a brief in opposition to the pending motion to dismiss. This failure comes after McKnight was previously ordered to file briefs in opposition to the Backup Officer Defendants' motion to dismiss and warned that her failure to do so may be construed as her concurring with the motion to dismiss. (Doc. 68; Doc. 70). These repeated failures to comply with the Rules compel the Court to find that McKnight does not oppose Kingsboro's motions to dismiss.

B. THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO PROSECUTE.

Although Kingsboro's motion to dismiss is deemed unopposed, the Court must "analyze the *Poulis* factors before imposing sanctions of dismissal." *United States v. Brace*, 1 F.4th 137, 143 (3d Cir. 2021). Here, the *Poulis* factors weigh heavily in favor of dismissal.

### 1. McKnight's Personal Responsibility

The Court finds that the first *Poulis* factor, the extent of a plaintiff's personal responsibility, weighs in favor of dismissal because the delays in this case are entirely attributable to McNight. 747 F.2d at 868. As a *pro se* litigant, McKnight is solely responsible for prosecuting her claims. *See Hoxworth v. Blinder Robinson & Co.*, 980 F.2d 912, 920 (3d Cir. 1992). "As a general rule, a *pro se* litigant is responsible for his failure to comply with court orders." *Lopez v. Cousins*, 435 F. App'x 113, 116 (3d Cir. 2011) (not precedential); *see also Emerson v. Theil College*, 296 F.3d 184, 191 (3d Cir. 2002); *Winston v. Lindsey*, Civ. No. 09-224, 2011 WL 6000991, at *2 (W.D. Pa. Nov. 30, 2011) (concluding that a *pro se* litigant "bears all of the responsibility for any failure to prosecute his claims").

McKnight has neglected to litigate her claims against Kingsboro and failed to file a brief in opposition to Kingsboro's pending motion to dismiss, as required by the Local Rules. See *Lookingbill v. Fetrow*, No. 13-01636, 2015 WL 4077999, at *4 (M.D. Pa. July 6, 2015). On December 3, 2024, the Court granted McKnight a 60 day stay to allow her to proceed *pro se* or retain new counsel after her attorneys withdrew, which she did not do. (Doc. 68). As of the date of this Memorandum Opinion, McKnight has failed to submit Rule 26 disclosures, respond to correspondence from Kingsoboro's counsel, attend a case management conference with the court, and file a brief in opposition to the instant motion to dismiss. (Doc. 83, at 6-7; Doc. 81). Accordingly, the first *Poulis* factor weighs in favor of dismissal.

2. **Prejudice to Kingsboro**

The second *Poulis* factor, prejudice to the moving party, also weighs in favor of dismissal. 747 F.2d at 868. A finding of prejudice does not require "irremediable harm." *Adams v. Trs. of N.J. Brewery Emps.' Pension Tr. Fund*, 29 F.3d 863, 873–74 (3d Cir. 1994). Rather, "the burden imposed by impeding a party's ability to [effectively prepare] a full and complete trial strategy is sufficiently prejudicial." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003). "Prejudice also includes deprivation of information through non-cooperation with discovery, and costs expended obtaining court orders to force compliance with discovery." *Adams v. Trs. of N.J. Brewery Employee's Pension Tr. Fund*, 29 F.3d 863, 874 (3d Cir. 1994). Such non-cooperation with discovery can lead to "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." *Scarborough v. Eubanks*, 747 F.2d 871, 876 (3d Cir. 1984).

10

Here, the Court finds that McKnight's failure to participate in discovery, correspond with opposing counsel, attend conferences with the Court, and respond to Kingsboro's motion to dismiss now wholly frustrates and delays resolution of the claims against Kingsboro. McKnight's failure to advance this case means that no formal discovery has been conducted since McKnight filed the amended complaint over a year ago, which arises from a series of events that occurred five years ago. (Doc. 56; Doc. 83, at 16). This lapse in time obviously leads to some dimming of witnesses' memories and impedes discovery. *See White v. FedEx Supply Chain*, Inc. No. 19-CV-00325, 2020 WL 7075259, at *4 (M.D. Pa. Dec. 3, 2020). Such failure to litigate prejudices Kingsboro, who without timely responses by McKnight cannot not seek a timely resolution of the claims against her. *See Hayes v. Nestor*, No. 09-6092, 2013 WL 5176703, at *4 (D.N.J Sept. 12, 2013) (finding plaintiff's failure to participate in the discovery process, comply with court orders, and proceed with litigation prejudiced defendants); *see also White v. FedEx Supply Chain*, Inc. No. 19-CV-00325, 2020 WL 7075259, at *4 (M.D. Pa. Dec. 3, 2020) (finding failure to participate in the discovery process restricted defendant's access to information necessary to prepare its defense strategy). Accordingly, the second *Poulis* factor weighs in favor of dismissal.

### 3. History of Dilatoriness

The third *Poulis* factor, history of dilatoriness, also weighs in favor of dismissal. 747 F.2d at 868. "Extensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders." *Adams*, 29 F.3d at 874; *see also Emerson*, 296 F.3d at 191 (per curium) (finding a history of dilatory conduct where the plaintiff repeatedly requested stays and failed to comply with court-mandated deadlines). Conversely, "conduct that occurs one or two times

11

is insufficient to demonstrate a history of dilatoriness." *Briscoe v. Klaus*, 538 F.3d 252, 261 (3d Cir. 2008) (citation omitted). In deciding whether a history of dilatory conduct exists, this Court must evaluate "a party's problematic acts ... in light of its behavior over the life of the case." *Adams*, 29 F.3d at 875.

Here, McKnight failed to timely file an opposition brief even though previously, with the Backup Officer Defendants, the Court warned McKnight that if she failed to file a brief in opposition, the Court may deem her to have abandoned her claims and not oppose the motion. (Doc. 68; Doc. 70). Additionally, McKnight failed to provide an updated or accurate address of record, respond to correspondence from opposing counsel, attend a case management conference with the Court, and otherwise participate in the discovery process. (Doc. 83, at 6-7). In sum, McKnight was given multiple opportunities to litigate her claim and to file a brief in opposition, but she still failed to do so. Accordingly, McKnight's inaction demonstrates a history of dilatoriness that weighs in favor of dismissal.

### 4. Willful Conduct or Bad Faith

The fourth *Poulis* factor, willful conduct or bad faith also weighs in favor of dismissal. 747 F.2d at 868. The fourth *Poulis* factor requires the Court to consider whether McKnight's conduct reflects mere inadvertence or negligence, as opposed to "strategic," "intentional or self-serving behavior." *Adams*, 29 F.3d at 875-76. "Under this factor, the District Court must consider whether the conduct was the type of willful or contumacious behavior which [can be] characterized as flagrant bad faith." *Briscoe*, 538 F.3d at 262 (quotation omitted). On multiple previous occasions in this case, the Court warned McKnight of the possible consequences of failing to file a brief in opposition. (Doc. 65; Doc. 68; Doc. 70). Additionally, McKnight disregarded correspondence from Kingsboro's counsel, missed a case management

conference, and failed to proceed with litigation in any way. (Doc. 83, at 16). As McKnight has failed to take any action to litigate her claim since November 2024, the Court is thus compelled to conclude that her inaction is not accidental or inadvertent, but rather reflects an intentional disregard for the Court's directives and this case. (Doc. 67); *See Gilyard v. Dauphin Cty. Work Release*, No. 10-1657, 2010 WL 5060236, at *2 (M.D. Pa. Dec. 6, 2010) (stating "[p]laintiff's repeated dilatory conduct and failure to abide by court orders demonstrate a willful disregard for procedural rules and court directives"). Thus, the fourth *Poulis* factor weighs in favor of dismissal.

### 5. Availability of Alternative Sanctions

The fifth *Poulis* factor, the effectiveness of sanctions other than dismissal, weighs in favor of dismissal. 747 F.2d at 868. Generally, "sanctions less than dismissal [are] ineffective when a litigant, such as [Plaintiff], is proceeding *pro se*." *See Lopez*, 435 F. App'x at 116; *Emerson*, 296 F.3d at 191 (per curium); *Nowland v. Lucas*, No. 1:10-CV-1863, 2012 WL 10559, at *6 (M.D. Pa. Jan. 3, 2012) ("This case presents such a situation where the plaintiff's status as a *pro se* litigant severely limits the ability of the court to utilize lesser sanctions to ensure that this litigation progresses in an orderly fashion.").

Here, McKnight is proceeding *pro se* but not in *forma pauperis*; therefore, it is possible that monetary sanctions, including attorney's fees and costs, could be an effective sanction. However, McKnight's failure to comply with the Court's Orders and attend case management conferences leads to an inference that further directives to her would not be effective. *See Vessio v. Saw Creek Ests. Cmty. Ass'n, Inc.*, No. 13-2068, 2014 WL 6065924, at *8 (M.D. Pa. Nov. 6, 2014) (finding that the fifth *Poulis* factor weighs in favor of dismissal when a pro se litigant

13

has failed to comply with other court orders). Accordingly, the fifth *Poulis* factor weighs in favor of dismissal.

### 6. Meritoriousness of McKnight's Claims Against Kingsboro

The final *Poulis* factor, the meritoriousness of Plaintiff's claims, weighs against dismissal. 747 F.2d at 868. A claim is deemed meritorious when "the allegations of the pleadings, if established at trial, would support recovery by plaintiff." *Poulis*, 747 F.2d at 870. "Generally, in determining whether a plaintiff's claim is meritorious, [courts] use the standard for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Briscoe*, 538 F.3d at 263 (citing *Poulis*, 747 F.2d at 869-70). Accordingly, the Court will consider the merits of Kingsboro's motion to dismiss. (Doc. 82).

In her amended complaint, McKnight alleges claims of malicious prosecution and malicious abuse of process against Kingsboro. (Doc. 56). To prevail on a malicious prosecution claim asserted under § 1983 and state law, a plaintiff "must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; [and] (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice." *Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)); *see Alleyne v. Pirrone*, 180 A.3d 524, 540 (Pa. Commw. Ct. 2018) ("The elements of a malicious prosecution are (1) the institution of proceedings against the plaintiff without probable cause and with malice, and (2) the termination of proceedings in favor of the plaintiff."). For the malicious prosecution claim asserted under § 1983, there is an additional constitutional component requiring a plaintiff to show a loss of liberty beyond simply showing an unlawful arrest. *Merkle v, Upper Dublin School Dist.*, 211 F.3d 782, 792 (3d Cir. 2000).

"Probable cause exists when 'the facts and circumstances within the [defendant's] knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed.'" *Stetser v. Jinks*, 572 F. App'x 85, 87 (3d Cir. 2014) (quoting *U.S. v. Cruz*, 910 F.2d 1072, 1076 (3d Cir. 1990)). "While 'the probable-cause standard is incapable of precise definition or quantification,' all interpretations of probable cause require a belief of guilt that is reasonable, as opposed to certain." *Halsey v. Pfeiffer*, 750 F.3d 273, 299 (3d Cir. 2014) (quoting *Wright v. City of Phila.*, 409 F.3d 595, 602 (3d Cir. 2005) (additional internal citations and quotations omitted)). Generally, the existence of probable cause is a factual issue for the jury, and a court should "exercise caution before granting a defendant summary judgment in a malicious prosecution case when there is a question of whether there was probable cause for the initiation of the criminal proceeding." *Halsey*, 750 F.3d at 300; *Montgomery v. De Simone*, 159 F.3d 120, 124 (3d Cir.1998). When determining probable cause, officers are not typically required to analyze the credibility of the evidence they rely upon. *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 467 (3d. Cir. 2016); *Eckman v. Lancaster City*, 529 F. App'x 185, 187 (3d Cir. 2013); *Stafford v. Morris*, 816 F. App'x 712, 717 (3d Cir. 2020). However, probable cause does not exist when substantial evidence of a witness' unreliability outweighs the probable cause that would otherwise exist. *See Dempsey*, 834 F.3d at 479.

Here, McKnight has stated a plausible claim for malicious prosecution. For the first element, initiation of criminal proceeding, McKnight alleges that Special Agent Ferrari initiated the criminal proceeding. (Doc. 56, ¶ 129). However, police officers, such as Kingsboro, may be considered to have initiated a criminal proceeding if they "knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's

15

informed discretion." *Henderson v. City of Phila.*, 853 F. Supp. 2d 514, 518 (E.D. Pa. 2012). In her amended complaint, McKnight alleges that Kingsboro provided false reports and testimony regarding McKnight's actions at the traffic stop, which led to McKnight's prosecution. (Doc. 56, ¶ 125). Thus, McKnight plausibly alleges Kingsboro initiated the criminal proceeding. *See Henderson*, 835 F. Supp. at 518-19 (finding officer who fabricated a story to support an arrest met the first element of malicious prosecution). McKnight also satisfies the second element, that the criminal proceeding ended in her favor, by alleging Kingsboro initiated a criminal proceeding that ended in McKnight's acquittal. (Doc. 56, ¶ 122); *Johnson,* 477 F.3d at 81-82.

McKnight satisfies the third element, that the defendant initiated the proceeding without probable cause, by alleging that Kingsboro's investigation and prosecution of her lacked probable cause. (Doc. 56, ¶¶ 125, 144); *Johnson,* 477 F.3d at 81-82. McKnight contends Kingsboro knowingly perpetuated a false narrative of the night of Baltimore's arrest during the preliminary hearing and that Kingsboro was impeached for her inconsistent testimony at trial. (Doc 56, ¶ 118). Further, McKnight adequately alleges Kingsboro "'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions" that were "material" to "the finding of probable cause.'" *Tereo v. Smuck*, No. 16-CV-1436, 2018 WL 4404676, at *6 (M.D. Pa. Sep. 17, 2018) (quoting *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2005)); (Doc. 56, ¶¶ 47-54, 68, 101-105, 113-118, 133, 152, 167, 170). Taking these allegations as true for the purpose of a motion to dismiss, McKnight has sufficiently alleged an absence of probable cause. *See Crosland v. City of Phila,,* 676 F. Supp. 3d 364, 379 (E.D. Pa. 2023) (declining to dismiss a malicious prosecution claim because the relevant affidavit was "thinly sourced" with unreliable witness' statements.); *see also Brazil v. Scranton*

16

*School Board, et al.*, No. 22-CV-01514, 2023 WL 5916470, at *9 (M.D. Pa. Sep. 11, 2023) (denying a motion to dismiss a malicious prosecution claim because the complaint asserted probable cause was based on known "false information."); *Richter v. Pa. State Police*, No. 15-775, 2018 WL 2984966, at *9 (W.D. Pa. June 14, 2018) (noting that when an official does not disclose to a court known facts that would weigh against arrest, probable cause may be negated). Regarding the fourth element, malice may be inferred from the absence of probable cause. *Carson v. Aurand*, No. 1:17-CV-01263, 2019 WL 2539447, at *8 (M.D. Pa. June 20, 2019) (citing *Hugee v. Pennsylvania R. Co.*, 101 A.2d 740, 743 (Pa. 1954)).

McKnight alleges the additional element required by § 1983 through her allegation that she suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. (Doc. 56, ¶ 138, 156, 167). Thus, McKnight has stated a claim for malicious prosecution. *Barasky v. Dent*, No. 4:21-CV-02041, 2022 WL 14915557, at *6 (M.D. Pa. Oct. 25, 2022); *see Crosland,* 676 F. Supp. 3d 364, 379 (denying motion to dismiss a malicious prosecution claim because probable cause was based upon deficient testimony). McKnight also makes a claim for malicious abuse of process. (Doc. 56). "A section 1983 claim for malicious abuse of process lies where 'prosecution is [...] used for a purpose other than that intended by the law.'" *Rose v. Bartle*, 871 F.2d 331, 350 n.17 (3d Cir. 1989) (quoting *Jennings v. Shuman,* 567 F.2d 1213, 1217 (3d Cir. 1977)). However, "there is no cause of action for abuse of process if the claimant, even with bad intentions, merely carries out the process to its authorized conclusion." *Cameron v. Graphic Mgmt. Assocs.*, 817 F. Supp. 19, 21 (E.D. Pa. 1992). Instead, there must be a showing of perversion. *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 304 (3d Cir. 2003). The Third Circuit has defined "perversion" as a use of legal process "primarily to accomplish a purpose for which the process was not defined"

such that it "caused harm to the plaintiff." *Gen. Refractories Co. v. Fireman's Fund Ins. Co*, 337 F.3d 297, 304 (3d Cir. 2003). In *Jennings*, The Third Circuit explained the distinction between malicious abuse of process and malicious prosecution, also known as malicious use:

> For example, if the defendant justifies issuance of process by untruthfully saying that the plaintiff solicited burglary and uses the process only to have him jailed, this is malicious use only. It is not malicious abuse because jailing is the purpose for which criminal process was intended. If the defendant has process issued based on the truthful statement that the plaintiff solicited burglary and then uses the threat of prosecution for purposes of extortion, this is malicious abuse only. Finally, if, as is alleged in the present case, the defendant has process served based on false statements and uses threat of prosecution for purposes of extortion, both torts will lie.

*Jennings*, 567 F.2d at 1218–19 (footnote omitted).

McKnight alleges that Kingsboro's "objective" in participating in the prosecution was to "force her to step down from office." (Doc. 56, ¶ 171). McKnight further contends that Kingsboro intentionally scheduled the preliminary hearing directly before Plaintiff planned to announce her bid for re-election to adversely affect her chances. (Doc. 56, ¶ 97, 108). She argues that the sequence of events show that the process was intended to injure her career on the bench (Doc. 56, ¶ 171). These averments that Kingsboro used the prosecution to pressure McKnight to step down from the bench and damage her reputation before her campaign for re-election amount to allegations that they used the prosecution for purposes other than "[those] for which the criminal process was intended." *Jennings, 567 F.2d at 1219*; *see also Brown v. Johnston*, 675 F. Supp. 287, 290 (W.D. Pa. 1987) ("[w]hen process is used to effect an extortionate demand, or to cause the surrender of a legal right, or is used in any other way not so intended by proper use of the process, a cause of action for abuse of process can be maintained."); *Martin v. Finley*, No. 3:15-CV-1620, 2017 WL 626752, at *2-5 (M.D. Pa. Feb. 15, 2017) (denying a motion to dismiss abuse of process claims when a defendant allegedly

used the threat of a criminal proceeding to an illegitimate end, namely, to coerce a plaintiff to enter into a civil settlement). As McKnight plausibly pled her claims of malicious prosecution and malicious abuse of process against Kingsboro, the Court finds that the sixth *Poulis* factor weighs against dismissal.

### 7. Balancing of *Poulis* Factors

To reiterate, when weighing the *Poulis* factors, there is no "magic formula" or "mechanical calculation" that automatically warrants dismissal. *Briscoe*, 538 F.3d at 263. Quite the contrary, the Court is guided by the Third Circuit's warning that "no single *Poulis* factor is dispositive," and that "not all of the *Poulis* factors need be satisfied in order to dismiss a complaint." *Ware*, 322 F.3d at 222; *see also Mindek*, 964 F.2d at 1373. Here, the only factor favorable to McKnight is that her remaining claims have some merit. Considering the five other factors, on balance, the *Poulis* factors weigh in favor of dismissal of the claims against Defendants. *See Briscoe*, 538 F.3d at 263 ("these factors are not dispositive. . . because there is no 'magic formula'"); *see also Stezzi v. Citizens Bank of PA*, 542 Fed. Appx. 124, 126 (3d Cir. 2013) (dismissing case for failure to prosecute despite plaintiff's claims surviving motion for judgement on pleadings because of plaintiff's dilatory behavior and refusal to comply with court orders over the course of years). Accordingly, the claims against Kingsboro shall be **DISMISSED**. (Doc. 56).

### IV. LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Further, "[a] district court has 'substantial leeway in deciding whether to grant leave

19

to amend.'" *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) (not precedential) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). In civil rights cases, District Courts are to follow this instruction "even [if] the plaintiff [is] represented by experienced counsel [and] never sought leave to amend." *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000) (citing *Dist. Council 47 v. Bradley*, 795 F.2d 310, 316 (3d Cir. 1986)). In this case, leave to amend would be futile, as the operative complaint in this matter is McKnight's amended complaint as asserted against Kingsboro, and McKnight has failed to respond to the motion to dismiss the amended complaint and thus been deemed not to oppose as much. Accordingly, the Court will not grant McKnight further leave to amend at this juncture.

### V.    CONCLUSION

For the foregoing reasons, the motion to dismiss is deemed unopposed and will be **GRANTED.** (Doc. 82). All claims against Kingsboro are **DISMISSED**. (Doc. 56). The Clerk of Court is directed to **CLOSE** this action.[2] An appropriate Order follows.

BY THE COURT:

Dated: October 27, 2025

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**

---

[2] This case has been pending for over two years, and the amended complaint for over a year. In that time, Plaintiff has not identified or indicated that she is attempting to identify any of the John or Jane Doe defendants. "[O]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed.R.Civ.P. 21. Use of John Doe defendants is permissible in certain situations until reasonable discovery permits the true defendants to be identified. *Blakeslee v. Clinton Cnty.*, 336 Fed. App'x 248, 250, 2009 WL 2023554, at *1 (3d Cir. 2009). If reasonable discovery does not unveil the proper identities, however, the John Doe defendants must be dismissed. *See Scheetz v. Morning Call, Inc.,* 130 F.R.D. 34, 37 (E.D. Pa.1990). The Court will dismiss the claims against the unidentified defendants without prejudice.